[Civ. No. 20210. Second Dist., Div. Three. Oct. 25, 1954.]

FIREMAN'S FUND INSURANCE COMPANY et al., Respondents, v. JUAN ROMERO, Appellant.

332

Carl B. Sturzenacker for Appellant.

Hindman & Davis and Fred G. Kennedy for Respondents.

SHINN, P. J.—Defendant Romero appeals from a judgment in favor of plaintiff insurance companies. The basis of the action was a subrogation claim assigned to plaintiffs by their insured, one Pollack, to whom plaintiffs had paid the amount of a fire loss. Liability of Romero existed only in case the fire was caused by his negligence. The court found that Romero caused the fire but made no finding that it was caused by his negligence nor was there any finding of facts from which it would follow by necessary implication that Romero was negligent.

Romero sold a large dwelling house to Pollack, but remained in the house at Pollack's request for the purpose of showing it to prospective purchasers. The fire occurred in one of the upstairs bedrooms, causing damage of more than $9,000, which plaintiffs paid in proportion to their respective liabilities. Pollack assigned his claim against Romero to plaintiffs.

The only witness who could testify concerning the circumstances in which the fire was discovered was Gerald Wunderlich, who was occupying a second floor bedroom in the house. He testified on behalf of defendants that he, Romero and a friend of Romero's had had dinner and a bottle of wine at a café and had spent the evening there. They returned to the house sometime about midnight. Romero ap-

parently drove his friend home; Wunderlich went to bed. Later Romero went to bed. Early the following morning, Wunderlich arose to go to the bathroom to shave. He noticed smoke coming from underneath the door of Romero's room. Entering the room he found Romero in bed, the bedclothes on fire; they were smoldering, not blazing. The covering of the mattress in an area about the size of one's hand was smoldering. Romero was fast asleep. Wunderlich removed the bedding, took it downstairs to the kitchen, soaked it in a laundry tray and left it there. He carried water from the bathroom, a glassful at a time, and put it on the fire in the mattress. After he had shaved he soaked towels and placed them upon the charred area of the mattress. He assisted Romero into another room and placed him in bed. Romero was still asleep and did not awaken. In explanation of this phenomenon, Wunderlich testified that Romero was a heavy sleeper; when asleep he could not hear the telephone ring in his room; as a rule after he arose it would take him about an hour to become fully awake. After extinguishing the fire, or attempting to extinguish it, Wunderlich went to church and returned to the residence at about 9:30 a. m. A fire alarm came to the fire department at 6:13 a. m. When the department responded it was found necessary to enter the upstairs bedroom through a window. The entire room and contents were ablaze. Romero was found unconscious in a third bedroom in front of a window which had been broken. He had suffered scalp wounds and was taken to the hospital for first aid treatment. There were two electric lamps and a telephone in the room. The firemen did not examine these. The condition of the room was such that it was not feasible to make a physical examination to determine the cause of the fire. It was plaintiffs' theory, and the complaint alleged, that the fire was caused by the negligence of Romero in the handling and use of cigarettes, matches and other materials likely to cause fire. Romero testified that he was not smoking in bed. He had no recollection as to what occurred after he went to bed although he did recall that he groped his way into another room after he was awakened by the fire.

Plaintiffs made repeated efforts to elicit from their witnesses opinions as to the cause of the fire. Lloyd B. Canfield, Beverly Hills fire chief, was questioned, also Ray W. Borders, a Beverly Hills police officer, for the purpose of eliciting from them expert opinions. Defendent's objections were sustained. Borders testified to a conversation with Romero and Wun-

derlich after the fire; he asked Romero whether he recalled lighting a cigarette and Romero answered: "He said yes, or he said 'I don't recall,' he says, 'but I know I oftentimes go to bed with a cigarette.'"

In the examination of Wunderlich, the court asked the question: "When you went in his room and you saw the fire . . . What did you think caused the fire?"; the witness answered: "I don't know. Now, everybody asked me that and when I think back I don't know, I mean everybody says could it have been a cigarette. Sure, it could have been but I . . ." The court asked: "At the time, at the time that you saw him in the bed and you saw it burning, did you try to ascertain the cause of it?" The witness answered: "No, I wasn't interested in that at all, I was interested in getting him out of bed." In rebuttal plaintiffs called a witness, Carl A. Halter, a professional fire investigator. The obvious purpose was to elicit testimony of statements made by Wunderlich and an opinion of the witness as to the cause of the fire. He was questioned as to the investigation he had made. It consisted of talking with people. He had not talked with Romero. He was asked whether he had discussed the fire with Wunderlich and testified that he had had such a discussion more than a year after the occurrence of the fire. He was asked what Wunderlich had told him as to what transpired that evening. Defendant's objection to the question was overruled. The question was not answered. Defendant did not object to the further question as to what Wunderlich had said concerning his own actions at the time of the fire. The witness then related statements of Wunderlich as to his own actions on the morning of the fire. Defendant objected to a question whether Wunderlich had mentioned Romero's habits so far as smoking was concerned. The objection was overruled. The witness answered as set out below.

"A. He told me Mr. Romero was an inveterate smoker, he had on several instances observed him burn a hole in his clothing, he mentioned a dressing gown he had seen burned two or three times, he told me Mr. Romero quite often smoked in bed of an evening, in fact he was smoking in bed, and Mr. Romero had told him so, he was smoking in bed when he went to bed the night before the fire was discovered the next morning.

"Q. Did he during this conversation tell you anything else in regard to Mr. Romero's habits or about the fire that he had not already related to us? A. He told me that it was his

opinion that the fire was probably caused by Mr. Romero's smoking in bed.

"MR. STURZENACKER: Move to strike that, not responsive to the question and is merely a statement of somebody else's opinion.

"THE COURT: Can it be used for impeachment? The Court asked the question, the Court realized at the time it was asked it was objectionable, I asked him what in his opinion was the cause of the fire. There was no objection to it. Counsel could have objected and I will not ask questions if they are objected to. I later asked him if he tried to ascertain it, what was the cause of the fire, and the answer to those questions have been given, I think that the answers now of this witness, I presume counsel is using him for the purpose of impeachment . . .

"MR. KENNEDY: That is it.

"THE COURT: Considered for that purpose only. Objection overruled."

Thereafter plaintiffs' counsel endeavored without success to lay a foundation for an opinion of Halter as to the cause of the fire. It was the evident purpose to use the alleged statements of Wunderlich as a part of the foundation for the opinion. Although Wunderlich had testified that he had no opinion as to the cause of the fire and according to Halter expressed such an opinion more than a year after the fire, the suggestion that Halter's testimony was admissible for the purpose of impeachment came from the court. ██ Impeachment, of course, is not allowed as to immaterial matters. ██ Halter's testimony as to Wunderlich's statements concerning Romero's smoking habits and his statement that he was smoking in bed was pure hearsay and it was error to admit it. ██ Although the court indicated that the testimony as to Wundelich's statement of his opinion as to the cause of fire would be considered only so far as it tended to impeach the credibility of Wunderlich, the same is not true as to Wunderlich's statement that Mr. Romero had told him ". . . he was smoking in bed when he went to bed the night before the fire was discovered the next morning." We can conceive of no theory upon which this testimony was admissible. It bore directly upon the one crucial question in the case. Its admission was error.

We now consider the principal question, namely, whether the judgment can stand in the absence of a finding that the

fire was caused by the negligence of Romero. ■ Plaintiffs say first that findings should be liberally construed in the light of the evidence and, so construed, the finding that the fire was caused by Romero is a finding that it was caused either negligently or intentionally. This would not be construing a finding which the court had made, but making a finding which the court did not attempt to make. Moreover, it is a false assumption. The fire might have been caused accidentally, without negligence.

We are thus brought to the question whether upon the evidence we should make a finding of negligence. ■ It is well settled that a party cannot complain of the failure of the court to find on a material issue if the finding, if made, would necessarily have been against him. In such a case, the failure to make the finding will be held nonprejudicial or, for the purpose of affirming the judgment, a finding can be made by a reviewing court to correct the omission. In brief, if we cannot hold that a finding of the absence of negligence on the part of Romero would have had no substantial support in the evidence, failure to make a finding on the issue is fatal to the judgment.

We do not question that the circumstantial evidence was sufficient to have justified findings that Romero was negligent and that his negligence was a proximate cause of the fire. ■ No witness was able to testify as to what happened between the time Romero went to bed and the time around 6 o'clock when Wunderlich entered the room. Romero, according to the evidence, was steeped in slumber until he was awakened by the fire at about 6 o'clock. Plaintiffs say defendant produced no evidence as to the cause of the fire, which is true. If there had been a cause other than a lighted cigarette, Romero would not have known of it. He had no recollection whatever as to what occurred from the time he went to bed until he was awakened by the fire. Under these circumstances it would be proper to indulge the presumption that he was not negligent. In comparable situations the presumption is applied where the acts and conduct of a deceased person with respect to negligence are the subject of inquiry (*Westberg* v. *Willde*, 14 Cal.2d 360, 367 [94 P.2d 590]); also where a party charged with negligence has been incapacitated by loss of all memory of the circumstances of the accident (*Scott* v. *Sheedy*, 39 Cal.App.2d 96 [102 P.2d 575]). ■ Although a party is not entitled to the benefit of the presumption

if his testimony or that of his witnesses proves that the described conduct was irreconcilable with the exercise of due care, if it is reconcilable the presumption applies. (*Hill* v. *Ralph*, 117 Cal.App.2d 434 [256 P.2d 48] ; *Duehren* v. *Stewart*, 39 Cal.App.2d 201 [102 P.2d 784].) ▮ Defendant's testimony that he was not smoking in bed was, of course, reconcilable with the presumption of the exercise of due care. The matter of his credibility has nothing to do with his right to the benefit of the presumption. ▮ The presumption was evidence opposed to the inference of negligence that might have been drawn from the facts in evidence. If the court had found Romero not to have been negligent, the finding would have had support in the presumption. The burden of proof was upon plaintiffs. If the court had believed Romero it could have concluded that the cause of the fire had not been established. The duty of weighing the circumstantial evidence against the presumption was that of the trial court. ▮ It has been said many times that a presumption may furnish substantial evidence for a finding in accordance therewith. (See cases cited, *supra.*) ▮ Manifestly, this court should not make a finding that Romero was guilty of negligence, for this would mean that we would have to find, contrary to his testimony, that he was smoking in bed and, further, that he did not exercise ordinary care to extinguish the cigarette. Neither would we be disposed to commit ourselves to the proposition that smoking in bed is under all circumstances negligent conduct. This would mean in the present case that if Romero was smoking in bed, that fact as a matter of law would overcome the presumption of the exercise of due care. These were questions for the trial court.

▮ Plaintiffs say further that defendant cannot complain of the failure of the court to make a finding as to his negligence because he did not call the court's attention to the omission. This is the rule where the court has made a finding which is claimed to be ambiguous or uncertain. (*Moore* v. *Craig*, 5 Cal.App.2d 283 [42 P.2d 647].) ▮ But it is the duty of the prevailing party to see that findings are made which are sufficient to support the judgment. If he neglects to do so, he cannot shift the responsibility to his adversary. It is an unfortunate fact that trial judges who place too great reliance upon attorneys in the preparation of findings will sooner or later suffer reversal of their judgments.

The judgment must be reversed. In view of the error in the receipt of the testimony of the witness Halter as to the

statements of Wunderlich, there should be a retrial and not merely a limited trial for a determination of the question of negligence. As the trial court held, it is not a case for the testimony of experts as to the cause of the fire.

The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.