[Crim. No. 6441. Second Dist., Div. Three. Nov. 12, 1958.]

In re WALTER PERKINS, on Habeas Corpus.

Ellery E. Cuff, Public Defender (Los Angeles) and Charles A. Maple, Deputy Public Defender, for Petitioner.

Edmund G. Brown, Attorney General, and Ariel C. Hilton, Deputy Attorney General, for Respondent.

SHINN, P. J.—On October 3, 1958, Walter Perkins filed with this court a petition for a writ of habeas corpus to secure his release from Atascadero State Hospital, where he is held under commitment as an insane person. Return was duly made, a hearing was had at which Perkins was present and duly represented. Under order heretofore made the superior court file and all evidence and exhibits received upon the hearing of an application by Perkins in the form of a petition for habeas corpus for an order that he has been restored to sanity, held in the Superior Court of San Luis Obispo County September 17, 1958, have been transmitted to this court and made a part of the record in the pending proceeding.

The following facts are established: Perkins was accused in the city and county of San Francisco of murder; he was found to have been insane at the time of the offense and presently insane and was committed to the State Hospital on March 14, 1958 (Pen. Code, § 1026). More than 90 days thereafter a petition was filed on his behalf under section 1026a Penal Code for writ of habeas corpus representing that he had recovered his sanity and seeking his release, which, after

due hearing was denied by the Superior Court of San Luis Obispo County, which made an order on September 17, 1958, that Perkins had not been restored to sanity and recommitting him to the state hospital for further treatment.

The present application urges as the sole ground for petitioner's release that it was conclusively shown by the evidence adduced in the former proceeding that Perkins is presently sane and that the court was powerless to rule otherwise.

The return made to the superior court stated that in the opinion of the Superintendent and Medical Director of Atascadero State Hospital Perkins was no longer insane and need no longer be confined in a state institution for care and treatment. This return was filed on behalf of the Superintendent by H. D. Neufeld, M.D., a member of the medical staff of the hospital.

.The petitioner was present at the hearing but was not questioned nor did he speak. The only witness was Dr. Neufeld. There was documentary evidence considered by the court, consisting of a letter from the district attorney of the city and county of San Francisco, stating that he had no evidence to offer and that his office would be willing to abide by the findings of the medical staff of the hospital. Dr. Neufeld testified that Perkins had been directly under his care and supervision and that he was well acquainted with him; Perkins had been unusually cooperative; his conduct had been normal in every respect without any sign of delusion; at the time of the commission of the murder Perkins was under restraint in a hospital as an alcoholic; he was suffering from alcoholic hallucinosis; all the symptoms of this affliction disappear in a month or less and the patient is restored to normalcy; at the time of the murder Perkins had been deprived of liquor and had been given drugs; alcoholic hallucinosis is primarily due to the use of the liquor itself but "not so much to the liquor as to the sudden cessation"; Perkins was suffering from "an acute febrile condition plus the drugs that had been administered. Now, it is rather, shall I say, unusual to have a combination of circumstances such that which would be necessary to even create the possibility that this sort of thing might recur."

The burden of proof was upon Perkins to establish that he had been restored to sanity. There was also a presumption that having been committed as insane he would be deemed to be insane until his sanity had been legally restored

(*In re Zanetti,* 34 Cal.2d 136, 138 [208 P.2d 657] ; *People* v. *Field,* 108 Cal.App.2d 496 [238 P.2d 1052] ). This presumption was evidence. (*Fireman's Fund Ins. Co.* v. *Romero,* 128 Cal.App.2d 331 at 338 [275 P.2d 83].)

 It is a general rule that a disputable presumption may be overcome by evidence introduced on behalf of the party in whose favor the presumption runs if it conclusively establishes the nonexistence of the presumed fact. (*Chakmakjian* v. *Lowe,* 33 Cal.2d 308 at 313 [201 P.2d 801], and cases cited.) However, in the hearing the presumption had no part in the decision that was rendered nor did the court weigh the evidence that was introduced. Moreover, as we shall presently see, that evidence not only sustained the burden of proof but it was conclusive of Perkins' restoration to sanity.

The trial judge, for whom we have the greatest respect, did not question the findings of the medical staff nor the testimony of Dr. Neufeld. At no time during the entire proceedings did he intimate that he believed Perkins to be insane. It is true that he entered an order which declared that Perkins had not been restored to sanity and which directed him to be re-committed to the hospital for further care and treatment but the reason for this, and the sole reason, was made perfectly clear. The judge was convinced that the matter of Perkins' sanity should be determined by the Superior Court of the City and County of San Francisco from which he had been committed. After referring to the provision of section 1026a that the patient must be confined until after notice and hearing the court shall determine that his sanity has been restored, the judge said "I am not going to take that responsibility and he should file his application with the committing court so I am going to deny the writ and find and determine that the sanity of Walter Perkins has not been restored and he is ordered to be remanded to the custody of Dr. R. S. Rood, Superintendent and Medical Director of Atascadero State Hospital, for continued care and treatment . I am not going to take the responsibility of releasing a man who had alcoholic hallucinations and killed somebody, and may have them again, and you say it is a possibility. Now, murder is involved." Following this, Dr. Neufeld expressed the opinion that there was only a remote possibility of a recurrence of Perkins' former condition, following which the judge said: "I think the committing court, where they have all the records of this should be the one to pass upon it. . . . Let that court determine.

78

There is where all the records and files are. . . . You will make your application now before the court from which this man was committed." The court's attention was called to the fact that another application could not be made for some time. This is a period of one year (Pen. Code, § 1026a), but the court stated: "Let that court determine." Under this section the application could have been made to the Superior Court of San Francisco but it was properly made to the court of San Luis Obispo County.

In view of our conclusion that Perkins' sanity was established in the hearing as a matter of law, it may not be inappropriate to refer briefly to the part played by the opinions of alienists in proceedings for the detention, commitment and release of persons suffering from mental illness or deficiency.

■ In the following proceedings initiated for the purpose of bringing about the detention or commitment of persons believed to be suffering from mental deficiency, it is mandatory that the court resort to the assistance of alienists in the trial of the issue of deficiency of the type charged; (1) where there is a trial of the plea of not guilty by reason of insanity (Pen. Code, §§ 1026, 1027); (2) where the inquiry is whether a person is a sexual psychopath (Welf. & Inst. Code, § 5504); or (3) a mentally ill person (Welf. & Inst. Code, § 5053); or (4) a narcotic addict (Welf. & Inst. Code, § 5354); or (5) an alcoholic or drug addict (Welf. & Inst. Code, § 5403); or (6) an abnormal sex offender (Welf. & Inst. Code, § 5603).

■ In cases of mental deficiency the court may in its discretion enlist the assistance of alienists (Welf. & Inst. Code, §§ 5250-5257). ■ Although it is provided in section 1127b of the Penal Code that juries should be instructed that the opinions of expert witnesses need not be accepted as conclusive, the reasons for the opinions should be considered and the evidence given the weight to which it is found to be entitled, although it may be disregarded if found to be unreasonable. The rule applies in proceedings under section 1026a Penal Code. (*People* v. *Denningham*, 82 Cal.App.2d 117 [185 P.2d 614].) But in many cases the rule is inapplicable to the medical findings and opinions of the superintendents and staffs of state hospitals with respect to the mental status of persons confined in those institutions. Where a person has been committed temporarily to a state hospital as a sexual psychopath he may be returned by a report of the superintendent to the superior court for further proceedings (Welf. & Inst. Code, § 5512). Where the person has been committed

under proceedings other than those prescribed by sections 1026a or 1367-1375, Penal Code, he may be released upon certificate of the superintendent if, in his judgment, the patient has recovered (Welf. & Inst. Code, § 6728). If a patient accused of a penal offense has been committed before judgment (Pen. Code, §§ 1367-1375), he shall be redelivered to the sheriff for further proceedings upon the certificate of the superintendent that he has recovered, approved by the judge of the superior court of the county in which he was committed (Welf. & Inst. Code, § 6760). There is no requirement for a court hearing.

▮ Although it is not required that in an application under section 1026a of the Penal Code that the court appoint alienists to assist the court in reaching a decision as to the patient's sanity, this is for the obvious reason that the patient has been under treatment and observation by the medical staff of the hospital for not less than 90 days and the members of the medical staff will be well qualified to testify to their opinions respecting the patient's sanity.

In view of the policy of the state, evidenced by all the foregoing provisions respecting the detention, commitment and the release of persons in insanity proceedings, it is apparent that the opinions of alienists are entitled to great weight. ▮ In the release of patients whose commitment is unrelated to criminal prosecution the findings of medical authorities are deemed conclusive with respect to the mental condition of patients who have been under observation, care and treatment in state hospitals. (Welf. & Inst. Code, § 6728.)

▮ We mention the foregoing matters of procedure in order to point out the division of authority that exists between the courts and the medical staffs of state hospitals with respect to the release of mental patients. Great responsibility is placed upon hospital management. ▮ In a proceeding under 1026a the opinions of the hospital alienists are based upon evidence relevant to the question of restoration to sanity as all the evidence must be. It is the function of the courts to decide the issue upon the basis of the evidence adduced at the hearing. ▮ Ordinarily there would be a conflict, or semblance of conflict, in the evidence to be resolved by the court. Here there was none. The district attorney of the city and county of San Francisco had no evidence to offer and very properly recognized the authority of the hospital medical staff.

Our further discussion will not be upon the erroneous

assumption that the court weighed the evidence and placed its own opinion above that of the hospital authorities. The fact is to the contrary. The question is merely whether the court had any authority to deny the petitioner a right which he had legally established.

The fact that Perkins had killed a human being and had been found to be insane at the time of the commission of the act, and at the time of the trial, did not tend in the slightest to controvert or weaken the opinions expressed by Dr. Neufeld or the findings of the medical staff that he had recovered his sanity and yet there was no other fact or circumstance which tended in any degree to lend support to the order of the court which declared that Perkins' sanity had not been restored.

As we have said, there was a presumption that Perkins was still insane, but the court did not consider or rely upon that presumption. If there was a presumption that ran in favor of the state it was dispelled by the medical testimony. The rule that the presumption is overcome by wholly contrary evidence introduced by the person in whose favor the presumption runs has no application. We do not base our conclusion that the evidence dispelled the presumption upon the theory that it was introduced by the state. ▮ Alienists appointed by the court in insanity proceedings should be deemed to be the court's own witnesses, and their opinions should not be deemed evidence produced either by the state or the person whose sanity is the subject of inquiry. Dr. Neufeld's testimony should have been given full credit without questioning whether his testimony was received on behalf of the state or of the petitioner. ▮ It has been held that if the evidence conclusively establishes a fact contrary to the presumed fact the presumption can be deemed overcome even though the evidence consists of the testimony of a party in whose favor the presumption runs. (*Estate of McConnell*, 6 Cal.2d 493, 499 [58 P.2d 639].) ▮ In proceedings under 1026a, if the expert opinions and the reasons given therefor are satisfactory and uncontrovertible, and if they stand as the only evidence received by the court upon the issue, they must be deemed conclusive.

▮ We repeat that we cannot accept as a theory for our decision that in the former hearing the court disagreed with the conclusions of the hospital medical staff. The record demonstrates that there was no such disagreement. And we know that the able trial judge, who has had long and trying experience in such matters would not substitute his own judg-

ment upon the issue of sanity for that of the hospital authorities, based upon long observation and upon uncontroverted facts which would justify no conclusion to the contrary of their own. As we have said, the sole reason for denying Perkins the relief he sought was that the court was of the belief that the application should have been made to the court by which Perkins had been committed. The effect of the order was that it required the detention of Perkins as a patient for one more year, and perhaps longer.

In the former hearing the right of Perkins to an order that he had been restored to sanity and for his release was established beyond question. It was the duty of the court to make such an order.

It has been held that an appeal will not lie from an order in a proceeding under section 1026a declaring that the applicant has not been restored to sanity (*In re Williams*, 30 Cal.App.2d 733 [87 P.2d 379]). A second application cannot be made until a year has expired after decision upon the first one. The only other remedy available to the patient is by means of habeas corpus. It does not occur to us that that remedy is any more or any less efficacious than would be an appeal.

Perkins' sanity was established as firmly as it can ever be established and if conclusive proof of that fact does not establish his right to be released, as a matter of law, he could be kept in confinement for the remainder of his days.

The present proceeding is solely an attack upon the jurisdiction of the court in the former proceeding to deny Perkins the relief to which he was entitled. The court had a manifest duty to act in only one way, namely, by adjudicating that Perkins had been restored to sanity; the order as made was therefore in excess of the jurisdiction of the court. (*Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715].)

The petitioner is not without adequate remedy. An appropriate, and indeed his only remedy, is provided by section 1485 of the Penal Code which requires that upon a hearing in habeas corpus "if no legal cause is shown for such imprisonment or restraint, or for the continuation thereof, such court or judge must discharge such party from the custody or restraint under which he is held." Further restraint of Perkins would be without legal cause.

Let a writ issue directed to R. S. Rood, Superintendent and

Medical Director of Atascadero State Hospital commanding him to release Walter Perkins from custody.

. Vallée, J., concurred.

WOOD (Parker), J.—I dissent. I do not agree that the trial judge was required to adopt the opinion of the medical witness as the decision of the court. The statute (Pen. Code, § 1026) provides that a defendant who has been committed to a state hospital for the criminal insane shall not be released from confinement unless the court which committed him, or the superior court of the county in which he is confined, shall find and determine that his sanity has been restored. It is therefore clear that the trial judge had a judicial function to perform. His function, of course, was more than the performance of a mere ministerial act of adopting the ipsedixitism of the medical witness. The judge was required to determine the fact as to whether or not Perkins' sanity had been restored. The judge was the one who, in the exercise of discretion and independent judgment, had the responsibility of determining the facts.

Perkins, who killed a human being in San Francisco on November 28, 1957, was tried in San Francisco, before Judge Caulfield without a jury, upon a charge of murder. He was found not guilty by reason of insanity and was committed to the state hospital for criminal insane at Atascadero, in San Luis Obispo County, on March 14, 1958. On August 27, 1958 . (about five and one-half months after he was committed), he made application to the superior court of San Luis Obispo County for release, and alleged therein that his sanity had been restored.

. Such an application could be made to the superior court in San Francisco from which he was committed, or in the superior court in San Luis Obispo County in which county he was confined. (Pen. Code, § 1026a.) In a hearing upon the application the burden of proving that his sanity had been restored was upon Perkins. (See Pen. Code, § 1026a.) The presumption that Perkins was insane was evidence. The burden was upon Perkins to present evidence that would rebut and overcome that presumption. The trial judge, who was the trier of the facts and the one authorized to issue the release, was the one to be convinced, by the evidence produced, that Perkins had carried the burden of proof and had overcome the presumption that he was insane.

The hearing upon the application was on September 19, 1958 (about six months after Perkins was committed). The minute entry on that day states: "The Petition is denied, the Writ is ordered discharged, and the Petitioner is remanded to the care and custody of Dr. R. S. Rood, Atascadero State Hospital, for continued care and treatment." On September 24, 1958, the judge made a formal signed order which stated: ". . . That said Walter Perkins continues to be insane and should be confined in a State Institution for care and treatment; Wherefore, it is hereby ordered that said Walter Perkins be remanded to the custody of R. S. Rood, M.D., Superintendent and Medical Director of the Atascadero State Hospital, Atascadero, California."

The return to the writ of habeas corpus (the writ issued by the San Luis Obispo court) was signed by Dr. Neufeld, who was the witness at the hearing. (The return was made by him on behalf of the superintendent of the hospital—the superintendent's name was in typewriting.)

Dr. Neufeld, in his testimony, undertook to relate "The situation that led up to the incident that caused" Perkins to be committed to the hospital. He testified that Perkins had been using alcohol excessively, "*according to the records,* approximately a fifth of a gallon of wine had been consumed daily over a considerable period of time"; that (as a result thereof) Perkins was confined in a hospital, the consumption of alcohol was discontinued abruptly, and drugs were administered; that those things "contributed to causing his condition" which is known as alcoholic hallucinosis. He testified further that such a "condition [alcoholic hallucinosis] subsides within a month or less"; and that "Some people fail to differentiate between alcoholic hallucinosis and delirium tremens."

While Dr. Neufeld was a witness, the judge said that if Perkins were released it is possible that he might get alcoholic hallucinosis again and kill somebody. The witness replied, "It is possible, yes." The judge said: "Here is a man that kills a person and in less than a year he wants to get out, and if he got alcoholic hallucinosis he might very well maybe kill a person again." The witness replied, "We can't exclude that possibility, no." After the judge said that he was "going to deny the writ and find and determine that the sanity of Walter Perkins has not been restored," the witness said that not only alcoholic hallucinosis was involved, but that an acute

febrile condition and the administering of drugs were also involved, and that it was rather unusual to have a combination of those circumstances which would be necessary to create the possibility that this sort of thing might recur.

The testimony of the witness included statements which might well have caused the trial judge to decline to rely on his opinion.

In the beginning of his testimony the witness made a statement as to what he understood to be the situation that led up to the incident that caused Perkins to be committed. His testimony indicates that his understanding as to that situation was based upon his understanding as to what was shown by "the records." Apparently he was giving his version or interpretation of the testimony and proceedings in the San Francisco court where Judge Caulfield presided.

It is to be noted further that the opinion of the witness was that the condition of Perkins (at the time of the killing) was a kind of insanity known as alcoholic hallucinosis and that such a condition "subsides within a month or less." The trial judge might well have concluded, by reasons of other evidence, that the opinion of the witness was erroneous. The fact is that the killing occurred on November 28, 1957, and that on March 14, 1958 (about three and one-half months after the killing), Judge Caulfield of the San Francisco court found that Perkins was then "presently insane." In other words, the kind of insanity which Perkins had at the time of killing did not "subside within a month or less" but had continued for three and one-half months after the killing and was still existing at the time of the commitment. The fact that the insanity which Perkins had did not subside within a month is a refutation of the opinion of the witness that the kind of insanity was alcoholic hallucinosis.

It is also to be noted that the witness said that some persons fail to differentiate between alcoholic hallucinosis and delirium tremens. The reason for the reference to delirium tremens does not appear. That reference, however, might indicate to the judge that the subject of delirium tremens had been involved in the trial in San Francisco.

If the trial judge had no judicial function to perform, and was not entitled to weigh the testimony of the witness and consider his manner and conduct while testifying, there would be no point in the legislative requirement that a hearing be had before the court. As above stated, the judge was the trier of the facts and was the one to be convinced that Perkins

had carried the burden of proof and had overcome the presumption that he was insane. The trial judge was not required to be so convinced by such testimony of the medical witness. It was not necessary for the judge to comment as to whether or not he questioned the opinion of the medical witness. He made a definite and formal finding that Perkins continues to be insane. It is apparent that the trial judge was of the opinion that in order for Perkins to present the full case regarding his application for release he should have made the application to the San Francisco court from which he was committed. In that connection the trial judge remarked that only a short time had elapsed since Perkins was committed, and that all the records and files were in the San Francisco court. It is reasonable to assume that the trial judge considered that if Perkins elected to make an application in San Luis Obispo County, where the judge had no previous connection with the case, instead of making application in San Francisco, where the committing judge still presides and where the records and files are, then, in order for the trial judge herein to assume the responsibility of issuing the release, the burden was on Perkins to present the full case for the consideration of the court.

At the time of making the order herein, the trial judge referred to the testimony of the medical witness wherein the witness said that it was a possibility that Perkins might have alcoholic hallucinosis again.

In my opinion, the trial judge properly exercised his judicial function of determining the facts; and the order was amply supported by the evidence.