[Crim. No. 3894. First Dist., Div. Two. May 16, 1961.]

THE PEOPLE, Respondent, v. ARMSTEAD RICHARDSON, Appellant.

Lawrence H. Stotter, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Derald E. Granberg, Deputy Attorneys General, for Respondent.

SHOEMAKER, J.—This is an appeal by defendant from a judgment of guilt for the crime of burglary in the first degree and sanity at the time of the offense.

The record shows that on July 3, 1960, at about 10 p. m., a neighbor noticed a strange automobile parked in the garage of Martin C. Franich, Jr., and flashes of light in the house, which she reported to the Watsonville police.

The police went to the Franich house and found it in darkness, noticed the automobile parked in the garage, and that a door leading from the garage to the house was open. They searched the house and found defendant hiding in the basement and in possession of a flashlight. Investigation disclosed, among other things, three bottles of whiskey under the dining room table, several drawers pulled out in the kitchen, a whiskey bottle in the front seat of the car parked in the garage, which car belonged to the defendant. At the time of the arrest defendant looked sober and there was no indication he had been drinking, and when questioned about the whiskey, defendant stated that he was going to sell it to pay a traffic ticket. Defendant explained his presence in the home by stating that he had received a citation from the California Highway Patrol and that he had attempted to contact Mr. Franich and felt by going into his home and causing the police to be called, he would thereby get in touch with him. Defendant also testified that he had been drinking on the day of the offense and professed having no recollection regarding what had transpired on the evening of his arrest. All that he remembered was getting into an automobile and starting to drive and the next thing he recalled was being at the police station.

Martin Franich testified that he had been chairman of the Rotary Parole Committee, and had visited Soledad State Prison in that capacity, and there met defendant, who was

imprisoned there; that he had employed defendant until about six months prior to his arrest, had known him for approximately two years, and had not given defendant permission to be in his home.

Appellant's contentions fall into two main categories. The first relates to the substantive aspects of the trial, and the second concerns itself with the insanity portions of the trial.

Appellant first contends that the trial court erred in informing the prospective jury of the charge of a prior conviction of a felony and in permitting the prosecution to allude to such conviction during the trial after appellant had admitted the truth of the charge prior to the commencement of his trial. The first objection arises out of the remarks of the trial judge in addressing the panel of prospective jurors wherein he commented on appellant's prior conviction and cautioned the jury that this was to be considered only as bearing on his credibility. In this the court erred, but since appellant made no objection to the statement, under the rule of *People* v. *Chapman* (1947), 81 Cal.App.2d 857, 862 [185 P.2d 424], appellant waived any error so arising.

 The second alleged error of the same vein arose during the course of the trial and consisted of the admission of testimony by Franich to the effect that appellant was a prisoner at Soledad at the time he met him. This testimony was objected to and again the alluding to a prior conviction is erroneous. (Pen. Code, § 1025.) However, such error was cured when appellant took the stand and thereby exposed himself to and was impeached on the ground of his prior felony conviction. (*People* v. *Chapman, supra*; *People* v. *Booth* (1925), 72 Cal.App. 160 [236 P. 987]; *People* v. *Jeffries* (1941), 47 Cal.App.2d 801 [119 P.2d 190].)

 Appellant next maintains that it was error to permit the prosecution to reopen the case after arguments had been concluded for the sole purpose of impeaching appellant's credibility by means of a prior felony conviction. The matter of reopening a case for further proceedings is within the sound discretion of the trial court (*People* v. *Berryman* (1936), 6 Cal.2d 331, 338-339 [57 P.2d 136]; *People* v. *Pompa* (1960), 178 Cal.App.2d 62, 66 [2 Cal.Rptr. 659]; *People* v. *Bowen* (1951), 107 Cal.App.2d 558, 560 [237 P.2d 318]), and the reopening of a case to permit the prosecution to impeach a witness is a proper purpose which lies within the area of the court's discretion. (*People* v. *Champion* (1924), 193 Cal. 441, 447-448 [225 P. 278].)

In a situation such as that presented here, no one is in a better position than the trial judge to ascertain whether the timing of the impeachment was the result of an oversight by the prosecution or whether it was a deliberate attempt to prejudice appellant.

Appellant next argues that he was entitled to assistance of the court-appointed alienists in preparing his defense. The record reveals that defense counsel stated that "I haven't had a chance to talk to him," and that it "wasn't my understanding it was going to trial on this particular issue at this time." The court pointed out, in response to the objections of counsel, that the case had been set for over a week and appellant offered no explanation as to what prevented him from conferring with the court-appointed alienists prior to trial. Furthermore, the court, upon learning that defense counsel had not yet talked to the alienists, offered to allow him to take time out to do so.

▮▮ Appellant further asserts that the alienists appointed were apparently assisting the prosecution. Appellant points to no evidence of this bias on the part of the alienists other than the bare fact that the court referred to the alienist as "your doctor" on one occasion when addressing the prosecution. Penal Code, section 1027, provides that an alienist may be called by either party to the action or by the court itself. Even though the court was under the impression that the alienist had been called into court by the prosecution, this would not indicate in any manner that he was "assisting" in the prosecution.

[▮▮ Appellant also complains of the fact that the request of defense counsel for the appointment of alienists to assist the defense was denied. Appellant is apparently under a misconception as to the purpose of court-appointed alienists. In the instant case, the court duly appointed two alienists to examine appellant and to investigate his sanity in accordance with Penal Code, section 1027. If we follow appellant's argument, it is that the court should have appointed two additional alienists at his request and solely for the purpose of aiding him in his presentation of the defense. Such is clearly not the purpose of the code section. Appellant himself quotes the following language from *In re Perkins* (1958), 165 Cal.App.2d 73, 80 [331 P.2d 712] : ". . . Alienists appointed by the court in insanity proceedings should be deemed to be the court's own witnesses, and their opinions should not be deemed evi-

dence produced either by the state or the person whose sanity is the subject of inquiry.''

There is no reason whatever why the court should have appointed two additional alienists for the purposes sought by appellant.

 Appellant also maintains that the law requires that at least two court-appointed alienists be sworn and their testimony made a part of the record. We have not found a case in California directly in point. However, there is language in the code section itself which indicates the legislative intent. The following pertinent language appears:

''. . . It is the duty of the alienists so selected and appointed to examine the defendant and investigate his sanity, and to testify, *whenever summoned,* in any proceeding in which the sanity of the defendant is in question. . . .'' [Emphasis supplied.]

This section also provides: ''Any alienist so appointed by the court *may be called* by either party to the action or by the court itself and when so called shall be subject to all legal objections as to competency and bias and as to qualifications as an expert. . . .'' [Emphasis supplied.]

It has been held that the appointment of alienists is mandatory only if requested and that in the absence of a request the failure of the court to make such an appointment is not a ground for reversal. (*People* v. *Wiley* (1931), 111 Cal.App. 622, 625-626 [295 P. 1075] ; *People* v. *Woods* (1937), 19 Cal. App.2d 556, 559 [65 P.2d 940].) In view of this established rule and the language of the code section just referred to, we are of the opinion that the calling of court-appointed alienists as witnesses is permissive only and that there is no duty on either the defense, the prosecution, or the court to do so.

 Appellant next contends that the trial court incorrectly instructed the jury as to the proper measure of legal insanity. Appellant points out that this defense is measured in California by the rule of M'Naughton's Case, which has been set forth as follows:

''. . . that at the time the accused committed the act he was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of his act *or,* if he did know it, that he did not know that he was doing what was wrong.'' (*People* v. *Nash* (1959), 52 Cal.2d 36, 39, f.n. 1 [338 P.2d 416].) [Emphasis supplied.] (See *People* v. *Coffman* (1864), 24 Cal. 230, 235; *People* v. *Gorshen* (1959), 51 Cal.2d 716, 726 [336 P.2d 492].)

In the instant case, the trial judge gave CALJIC Instruction Number 801, which contains the following definition: "Insanity, as the word is used in these instructions, means such a diseased and deranged condition of the mental faculties of a person as to render him incapable of knowing the nature and quality of his act *and* of distinguishing between right and wrong in relation to the act with which he is charged." [Emphasis supplied.]

This definition was read to the jury on two occasions, once during the course of the insanity portion of the trial, and again in the instructions to the jury at the conclusion of said trial. It is appellant's position that the giving of this instruction by the trial court was error because it told the jury in effect that they could find appellant insane only if he satisfied both specifications, whereas M'Naughton's rule, when correctly stated, requires only that a defendant satisfy either one of the two requirements in order to be found legally insane. The matter appears to be of first impression in California. In our opinion, the instruction given misstates M'Naughton's rule and did place a heavier burden upon appellant in his proof of insanity. Such has been the view taken in other jurisdictions. (See *Travis* v. *State* (1923), 160 Ark. 215 [254. S.W. 464, 465] ; *Plessman* v. *State* (1936), 130 Neb. 758 [266 N.W. 629, 631-632].) The instruction here given was implicitly approved by the Supreme Court in *People* v. *Nash, supra,* and expressly approved in *People* v. *Ricks* (1958), 161 Cal.App.2d 674, 677 [327 P.2d 209]. However, in each instance there was no attack made upon the instruction itself, the problem dealt with and discussed involving the correctness of the M'Naughton rule and whether or not it should be retained. Respondent argues, however, that the paragraph of the instruction immediately following the definition to which we have been referring correctly stated the insanity requirements of the M'Naughton rule by making it clear that a defendant can only be held accountable for his criminal acts if he is found to have both appreciated the character and comprehended the possible consequences of his act. Even if it be assumed that this portion of the instruction contained a clear statement of M'Naughton's rule, we are still faced with the proposition that the two paragraphs are contradictory and irreconcilable. (*Travis* v. *State, supra.*) Under these circumstances it is impossible to say which instruction was followed by the jury. Because of this error we must determine whether or not it was prejudicial. In this respect respondent contends that no prejudice could

have been suffered by appellant from the giving of this instruction in view of the fact that appellant based his entire defense of insanity on the theory that he had completely "blacked out" during the commission of the crime. We agree with respondent. All of the evidence introduced by appellant on the issue of insanity was to the effect that he "blacked out." Appellant testified that these were spells that came on him and that when they reached a climax he was completely blank and that he did not know what happened, and that his past experience with these spells was such that he underwent a period of time when he did not know what he did. It appears to us that if the jurors had placed any credence on appellant's explanation for his acts, that they would have found him to have been in a state of complete unawareness at the time that he committed the crime. Under these circumstances, where the only evidence of insanity offered by the appellant was "blackout" periods, there can be no relevance of a distinction between "knowing the nature and quality of his act" and "distinguishing between right and wrong in relation to the act. . . ." Under the instruction as given, if appellant's testimony had been believed, the jury could well have concluded that his mental state while committing the crime fulfilled both requirements thereof. We do not believe it can be gainsaid but that the jury disbelieved appellant's testimony as to a condition which is commonly invoked by those charged with crime. The instruction, although erroneous, was not prejudicial to appellant's rights in the instant case.

Appellant's final assignment of error is that the court prohibited defense counsel from fully cross-examining Dr. Graeber, one of the court-appointed alienists. Examination of the record shows that the cross-examination was only circumscribed by proper objection and that in the particulars in which it was proper counsel had full scope to develop the evidence. We find no prejudicial error.

Judgment affirmed.

Draper, Acting P. J., concurred.