[Crim. No. 337. Fifth Dist. June 1, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. SPENCER WHITTEMORE OAKLEY, Defendant and Appellant.

Richard A. Case, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—The appellant was convicted by a jury of first degree burglary in that "on or about the 18th day of May, 1966, at and in the County of Siskiyou, State of California [he] did wilfully enter the house occupied by Gloria Phillipe, at 617 French Street, in the City of Yreka, County and State aforesaid, with the intent then and there and therein unlawfully and feloniously to commit theft."

There was no claim by the appellant that he did not enter the house in question or that there was not an asportation by him of money and property, including a typewriter, belonging to Mrs. Phillipe; his sole argument for reversal, apart from objections to certain procedural features which will be referred to later, is that the instructions given by the court did not fully and fairly state to the jury the defendant's contention that, by reason of extreme intoxication, he was unable to form, and therefore did not have, a specific intent to commit theft when he entered the house in question. It is unquestionably true that if he did not so intend to commit theft in the circumstances shown by the present record he could not have been properly convicted of burglary. (Pen. Code, § 459; *People* v. *Lopez,* 249 Cal.App.2d 93, 98 [57 Cal. Rptr. 441]; 9 Cal.Jur.2d, Burglary, § 6, pp. 454-456.)

There was testimony by witnesses for the People, which, if believed by the jury, would permit it to discard the defendant's contention that the ingestion of alcohol had completely eliminated any intent on his part to commit theft when he entered the house. Consequently, the reliance of the appellant on this feature of his defense is based wholly on his argument that the court did not properly instruct the jury in accordance with this claim of lack of intent. A defendant is, of course, entitled to instructions on every theory of defense which is supported by substantial evidence, and the major premise argued by the appellant throughout his trial was lack of intent, so that he was entitled to proper instructions covering this feature. (*People* v. *Carnine,* 41 Cal.2d 384, 390 [260 P.2d 16]; *People* v. *Burns,* 88 Cal.App.2d 867, 871 [200 P.2d 134]; 48 Cal.Jur.2d, Trial, §§ 467, 468, pp. 479-480.)

At his original arraignment, defendant stated that he wished to appear in propria persona, and he then entered a plea of not guilty; later, he appeared before the court, told the judge that he was attempting to obtain counsel, and said that he wished to change his plea to not guilty and not guilty by reason of insanity. Proceedings were suspended and the defendant was sent to the Napa State Hospital for a psychiatric examination by two alienists, who thereafter reported to the court.

On appellant's return from Napa, he stated to the court that he had not been able to secure counsel, and the public defender was then appointed to represent him. A week later, defense counsel moved for a continuance of the trial for two weeks to permit the taking of depositions; the motion was

denied. The case was tried by a jury on June 30, 1966, it found defendant guilty of burglary in the first degree. Defendant then withdrew his plea of not guilty by reason of insanity, waived a reference to the probation officer, and requested immediate sentence. The court should not have accepted this waiver as no previous convictions were alleged in the information, and, under the circumstances, the requirement of a report by the probation officer was absolutely called for. (Pen. Code, § 1203.) However, this error is not such as to require a reversal. The court sentenced defendant to state's prison for the term prescribed by law.

It should be noted in passing that, when he was on the witness stand, Oakley volunteered that he had previously been convicted of four different felonies and also that he was an alcoholic.

It will not be necessary to review in detail the evidence which showed defendant's entry in the nighttime to the home of Mrs. Phillipe, the removal of her typewriter to his car, the rifling of her pocketbook, or defendant's apprehension by the police officers while he was hiding in Mrs. Phillipe's living room. These elements were all proven by uncontradicted evidence.

It is only requisite to ascertain what the record shows with respect to appellant's intoxication at the time he entered the Phillipe house at about 3 :15 a.m. When Graham and his fellow officer, Roop, went into the house, pursuant to a telephone call from the Phillipes, they found the defendant hiding behind the television set in the living room. They dragged him out to the center of the floor and there searched and handcuffed him. Officer Graham testified that at that time defendant appeared to be in a ''semi-conscious condition.'' They found Mrs. Phillipe's wallet and various articles, which had been carried in it, on the defendant's person, and also located the Phillipe typewriter and case in the 1964 Buick automobile used by defendant which was then parked in front of the lot west of Mrs. Phillipe's house.

Gilbert Gessler, night desk clerk at the Yreka Inn, testified that at about 2 o'clock in the morning of May 18, 1966, he saw Oakley get into a 1964 Buick Electra automobile near the inn; the license number of the car was noted by a Mrs. Russell, who was standing by; Gessler testified that Oakley had been breaking the windshields of cars parked in front of the inn, and he gave it as his opinion that the defendant was drunk. The night clerk also testified that defendant's car was

blocking the driveway, that he asked Oakley to move it, and, after an ineffectual visit to the car, Oakley came back and asked the night clerk to move it for him, saying that he himself could not do so because he was so "snockered I can't find the key hole and the door is locked." Mr. Gessler then moved defendant's car for him.

Oakley himself took the witness stand and testified that, when he arrived in Yreka on May 17, he was ". . . on the lam of a parole violation," and he intended to go on to Oregon to visit a cousin; that he had been playing low ball and poker at the Yreka Inn and had been drinking heavily, that he finally got too drunk to play, cashed in his chips, and then continued drinking while watching a topless dancer. This was at about 11:30 p.m., and he testified that he remembered nothing of the evening's activities after that time. The defendant claimed that he was emotionally disturbed for various reasons, and that he had been drinking all day, also, that he had blacked out on numerous occasions because of the over-consumption of alcoholic drinks.

The appellant attempts to make two preliminary points with regard to procedural matters. The first claim is that the trial court committed prejudicial error in denying a motion made by the public defender's office on behalf of the defendant for a continuance of the trial for two weeks in order to permit the taking of depositions of Drs. Slaughter and Theile, and of Ann Tappon. The record is completely silent as to what such witnesses could have testified to. It does not show that the witnesses had been subpoenaed and could not be present at the trial (Pen. Code,§ 1336), or that they were about to leave the state or were so sick or infirm as to afford a reasonable ground for apprehension that they would not be able to attend the trial (Pen. Code, § 1337), or that they were residents of a state other than California (Pen. Code, § 1349).

The statutory right to a deposition in a criminal case is strictly limited (*Yannacone* v. *Municipal Court*, 222 Cal.App. 2d 72, 74 [34 Cal.Rptr. 838]). The showing made by the defendant in this respect is totally inadequate, and this attempted point is worthless.

The second procedural point urged by appellant is that after the jury had returned a verdict of guilty in the first phase of the trial, appellant's counsel requested the appointment of Dr. Theile and Dr. Slaughter to examine the appellant. This motion for additional psychiatrists was

denied. There was nothing to prevent the defendant from subpoenaing Dr. Theile and Dr. Slaughter if they had any knowledge concerning his mental condition, as might perhaps be inferred from the earlier demand that their depositions be taken. The showing made in support of this application is completely deficient as to any knowledge that these two doctors were supposed to have had concerning the psychiatric state of the defendant. *People* v. *Richardson,* 192 Cal.App.2d 166, 170-171 [13 Cal.Rptr. 321], holds that there is no principle of law which would authorize a court to appoint alienists to support a defendant's contentions as to his mental condition. The *Richardson* case quotes from the opinion in *In re Perkins,* 165 Cal.App.2d 73, 80 [331 P.2d 712], where it is said: "Alienists appointed by the court in insanity proceedings should be deemed to be the court's own witnesses, and their opinions should not be deemed evidence produced either by the state or the person whose sanity is the subject of inquiry." The *Richardson* opinion also points out that there is no reason why a court should appoint two additional alienists for the purpose sought by the appellant. After the court denied the motion to appoint two additional psychiatrists, the defendant withdrew his previous plea of "not guilty by reason of insanity."

■ We come now to the principal argument made by the appellant for a reversal of the judgment. He contends that the court erred in refusing the four following instructions proposed by him (in connection with which the trial court's comments are included):

1) "You are reminded that a person might be legally sane, as we define that term in dealing with the question of criminal responsibility, and yet be in an abnormal mental or nervous condition; and because of such condition he might be less likely or unable to have or to hold a specific intent or a certain state of mind, which is an essential ingredient of a certain crime. We have received evidence bearing on the mental and nervous condition of the defendant at the time of the alleged commission of the crime charged. Such evidence may be considered by you in determining whether or not defendant did any act charged against him and, if so, whether or not, at that time, there existed in him the specific mental factor and intent which must accompany that act to constitute a certain crime or degree of crime. You do not have before you any issue as to defendant's legal sanity.

"Caljic No. 73-B

"REFUSED—No evid. of mental & Nervous Condition at time of commission—(s) George G. Tyler.

"Offered by the Defendant."

2) "While intoxication, voluntarily acquired, is not a defense to crime, still, where the offense charged is one requiring the existence of a specific intent or state of mind, such as in the present case, if the proof is such as to show that such intent or state of mind did not exist, the accused is entitled to an acquittal and the absence of such intent or state of mind may be proved by evidence that at the time of the alleged offense the accused was so intoxicated as to be incapable of forming or entertaining such intent or state of mind.

"*People* v. *Demartini*, 63 Cal.App. 747 [219 P. 1045], *People* v. *Fellows*, 122 Cal. 233 [54 P. 830], *People* v. *Hower*, 151 Cal. 638 [91 P. 507], *People* v. *Keyes*, 178 Cal. 794 [175 P. 6].

"NOT GIVEN—P. C. 22 covers vol. intox.—(s) George G. Tyler. Offered by the Defendant."

3) "When the evidence shows that a person acted as if he was conscious, the law presumes that he then was conscious. The presumption, however, is disputable and may be overcome or shown to be untrue by evidence to the contrary.

"If you should find that the defendant committed an act, which, if he was conscious, would have constituted the crime charged against him or would have been an element of that crime, and, if you have a reasonable doubt whether the defendant was conscious at the time of such act, you should find that he was then unconscious.

"Caljic No. 71-D, 1962 Pocket Parts.

"NOT GIVEN—(s) George G. Tyler. Offered by the Defendant."

4) "If you should find from the evidence presented that defendant in fact entered the premises alleged to have been entered by him, but further, if you should entertain a reasonable doubt that at the time of that entry he did not have a specific intent to unlawfully steal, take and carry away the personal property of another, then you would be required to return a verdict of acquittal for the defendant.

"*People* v. *Granados*, 49 Cal.2d 490 [319 P.2d 346].

"NOT GIVEN—(s) George G. Tyler. Offered by the Defendant."

The first of the four refused instructions concerned a mental and nervous condition. The record does not show evidence of a nervous condition or mental disorder which would

prevent defendant's knowing what he was doing, apart from possible intoxication which is dealt with fully in other actual or proposed instructions; the court correctly refused the instruction for this reason.

The trial judge actually instructed on the effect of intoxication with respect to intent in the language of section 22 of the Penal Code as follows: 1) "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act.

"(s) George G. Tyler.

"AUTHORITY: Section 22 Penal Code of the State of California. Offered by the Plaintiff."

2) "If, from the evidence produced on behalf of the defendant, you should entertain a reasonable doubt as to the existence of a specific intent in the mind of defendant to unlawfully steal, take and carry away the personal property of another, assuming that you so find, you would be required to return a verdict of acquittal in this case.

"(s) George G. Tyler.

"*People* v. *Granados*, 49 Cal.2d 490 [319 P.2d 346]. Offered by the Defendant."

Thus, the jury was properly instructed as to intoxication in connection with the question whether or not the defendant actually had the intent to commit theft when he entered the home of Mrs. Phillipe. When one considers these two instructions with other portions of the charge given by the court, including the definition of burglary in which the necessity of intent to commit theft upon entering the house was stressed, it seems clear that the jury was correctly instructed with sufficient fullness so that the jury's verdict of guilty accurately reflected an implied finding that all of the elements of burglary were present. While we believe that it would not have been error to give any or all of the last three instructions requested by the defendant, as set forth above, we believe that the court's charge as given covered the subject sufficiently. A party involved in a lawsuit has no right to require repetitive instructions on a subject already covered. (48 Cal.Jur.2d, Trial, § 471, p. 482.)

Appellant's brief contains additional claims of error in which his counsel does not participate. The defendant states that he requested his attorney to subpoena three witnesses, but was informed that they were in a different county and could not be subpoenaed. There is nothing in the record to support this statement, and we cannot entertain the point for that reason. The defendant also says that the transcript does not cover details of a conversation with his attorney and the trial judge after the verdict and prior to the time originally contemplated for the sanity trial, and that he did not intelligently waive the sanity hearing. The record demonstrates that he gave his express approval to the withdrawal of the plea "not guilty by reason of insanity," and there is no basis for deducing error in the court's acceptance of the withdrawal. The defendant also says that he is a chronic alcoholic, and the record shows that he made the same statement when he was on the witness stand. There is nothing we can do about that, except to hope that he may be cured while in prison.

Finding no error, we affirm the judgment of conviction.

Stone, J., and Gargano, J., concurred.