[Crim. No. 5779. Second Dist., Div. Two. Dec. 27, 1956.]

THE PEOPLE, Appellant, v. CHARLES PHILLIPE ORTIZ, Respondent.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, S. Ernest Roll, District Attorney (Los Angeles), Jere J. Sullivan and Lewis Watnick, Deputy District Attorneys, for Appellant.

Cadoo & Tretheway and Donald G. Cadoo for Respondent.

FOX, J.—Defendant was charged with possession of marijuana. (Health & Saf. Code, § 11500.) His motion to set aside the information (Pen. Code, § 995) was granted. The People appeal.

Defendant was arrested at approximately 5 o'clock in the morning on July 10, 1956, in the 900 block on Pier Avenue, Hermosa Beach. Just prior to the arrest Police Officer Hopkins observed a car parked some 8 feet from the curb. Upon investigation, the officer discovered defendant lying on the front seat asleep with his head at the passenger side; his belt was loose, and "his trousers were down near his hips." The officer reached in the window, shook the defendant, and "finally got him awake." His breath was alcoholic and he "staggered badly, as he walked to the rear of his car." He told the officer he had had a quart of beer and a pint of whiskey the previous evening. The officer concluded he was intoxicated and arrested him for "drunk auto." (City Ordinance No. 508.) Officer Hopkins turned defendant over to the watch sergeant for incarceration.

Hopkins immediately began making an inventory of the items of personal property in the car preliminary to impounding it. In the course of his search, Hopkins found a small, brown paper bag containing marijuana in the glove compartment. The sergeant having departed with defendant for the jail, Officer Hopkins called them back. Upon being asked where the bag came from, defendant stated he did not know anything about it and refused to answer any more questions. Defendant does not appear to have made any statement then nor previously that the car was not his.

The officer also found in the glove compartment "two wallets containing numerous check stubs with defendant's name." The registration certificate for the car was in the glove compartment too.

It was the officer's custom always to make inventory of the contents of a car that he impounded. Such practice was deemed necessary to defeat dishonest claims by the owner of theft of the car's contents and to protect the temporary storage bailee against false charges.

At about noon on the day of defendant's arrest he was transported from the Hermosa Beach jail to the sheriff's station at Lenox by Deputy Sheriff Hatfield. In the course of that trip the deputy asked defendant how long he had been "fooling round with the weed," to which he replied "about three months." The deputy also asked the defendant "where he

had obtained the marijuana that was found in his car.'' Defendant stated that ''he had bought the marijuana on Main Street from an unknown, male negro approximately a week prior to his arrest.'' He further stated ''he had paid $5.00 for a half can'' and that ''the contents of the brown paper bag found in the glove compartment was the remainder of that half a can. . . .''

Defendant did not take the witness stand.

Defendant does not question the validity of his arrest. His thesis is that the search was unreasonable and therefore illegal. Hence the contraband that was found was inadmissible in evidence.

From defendant's position in the car, his physical condition, the manner in which the car was parked, and the earliness of the morning hour, the officer could reasonably conclude that defendant was ''in control of'' the vehicle,[1] and not just a passenger, at the time of the arrest. Hence the officer was entitled to impound the car (Veh. Code, §§ 585 (b)(5) and 585.2; Pen. Code, § 849), and thus take possession of it.

In the circumstances of this case it was not unreasonable for the police officer to make an inventory of the contents of the automobile prior to impounding it. Such inventory was a protection to the owner of the vehicle, the garage owner, and the officer. Since the marijuana was found during the course of making the inventory, it was not discovered as a result of an unreasonable search and therefore it was not inadmissible in evidence.

This result may be reached by another approach. Defendant's car was legally in Officer Hopkins' possession as an incident of its impounding. Its contents also were legally in his possession. Therefore possession of the marijuana was

---

[1]Defendant's statement to Deputy Sheriff Hatfield that he had purchased the contraband a week prior to his arrest and that the contents of the brown paper bag in the glove compartment were the remainder of that purchase justifies an inference that the car belonged to him, or, at least, that he was ''in control of'' it. This, plus Officer Hopkins' testimony, effectively disposes of defendant's contention that ''There is no testimony or any evidence before this court that the defendant was in *control of* or *driving* the motor vehicle in which he was reclining prior to his arrest.'' Incidentally, it does not appear that defendant made any suggestion to Officer Hatfield that the car was not his. Also, although this was a matter within his own knowledge and power to dispute, defendant failed to testify. For the significance of such failure, see *People* v. *Steccone*, 36 Cal.2d 234, 239 [223 P.2d 17]. Actually, the case appears to have been tried on the assumption that the car belonged to the defendant.

legally obtained by the officer. Where an automobile is lawfully in the custody of a peace officer, such contraband articles as are contained in it are legally in the possession of such officer (*People* v. *Baker,* 135 Cal.App.2d 1, 5 [286 P.2d 510]), and *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905], has no application.

Defendant also argues that the marijuana was illegally seized and therefore inadmissible in evidence because it "was not related to the crime for which the defendant had been placed in custody. . . ." An effective answer to this contention is found in *Harris* v. *United States,* 331 U.S. 145 [67 S.Ct. 1098, 91 L.Ed. 1399]. In that case federal officers, armed with an arrest warrant, arrested the defendant for one crime and while searching his apartment found evidence which implicated him in a wholly different and distinct offense. Upon conviction of the second charge, defendant appealed on the ground, among others, that the evidence thus procured was improperly admitted as it was not within the purview of the charge for which he was arrested. In rejecting defendant's contention, the court stated (pp. 154-155) : "Here during the course of a valid search the agents came upon property of the United States in the illegal custody of the petitioner. . . . A crime was thus being committed in the very presence of the agents conducting the search. Nothing in the decisions of this Court gives support to the suggestion that under such circumstances the law-enforcement officials must impotently stand aside and refrain from seizing such contraband material. If entry upon the premises be authorized and the search which follows be valid, there is nothing in the Fourth Amendment which inhibits the seizure by law-enforcement agents of government property the possession of which is a crime, even though the officers are not aware that such property is on the premises when the search is initiated."

Similar views were recently expressly by our Supreme Court in *People* v. *Roberts,* 47 Cal.2d 374, at 379 [303 P.2d 721]. It is there pointed out that officers in the course of conducting a reasonable search do not have to blind themselves to what is in plain sight simply because it is disconnected with the purpose for which they entered. In support of this principle the court cited *Love* v. *United States,* 170 F.2d 32, where officers entered defendant's home legally for the purpose of searching for another man but in the course of their search they discovered a still in operation, and *Paper* v. *United States,* 53 F.2d 184, where officers entered lawfully for the purpose

of finding and arresting defendant on one charge but in searching for defendant they found an illegal supply of liquor, constituting another offense, in the basement. The court quoted with approval the following from the Paper decision (pp. 184-185): "Where the entry and search are rightful and there is present no element of trespass or fraudulent invasion of the rights of the citizens, there is no reason for excluding evidence of crime discovered in the course of the search. If the officers . . . had discovered in the cellar a counterfeiting plant in operation, would it have been their duty to ignore it? If they had come upon the body of a murdered man, would their testimony as to finding the body be excluded?"

So, here, since the search was reasonable, Officer Hopkins was not required to close his eyes to the contraband he discovered simply because it was disconnected with the initial purpose of the search (*People* v. *Roberts, supra*), and the contraband thus discovered was not thereby rendered inadmissible in evidence. (*Harris* v. *United States, supra*.)

The order setting aside the information is reversed.

Moore, P. J., and Ashburn, J., concurred.