[Crim. No. 1562.   Fourth Dist.   Feb. 8, 1961.]

THE PEOPLE, Respondent, v. CHARLES WINFRED MYLES, Appellant.

44

Cornell Ridley for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and Nat A. Agliano, Deputy Attorneys General, for Respondent.

SHEPARD, J.—This is an appeal from a conviction of burglary, second degree. Defendant and his wife were both charged. The wife was acquitted. Defendant appeals from the judgment and from the order denying his motion for a new trial.

## FACTS

Viewing the evidence, as we must, in the light most favorable to the verdict (*People* v. *Newland,* 15 Cal.2d 678, 681 [1] [104 P.2d 778]), the facts are as follows: On September 2, 1959, at 4 a.m., police officer Robert Mosher of Corona, while patrolling in his vehicle north on Main Street, noticed two cars parked in front of Emerson's Clothing Store. Both cars pulled away from the curb with their lights out. The officer followed the car immediately in front of him (a black Cadillac convertible with the top up), north on Main Street and then east on Fourth Street. The car continued at a high rate of speed, zig-zagging through the northeast part of the city, with its lights still out. After some six blocks, it stopped at a blinking red light. Mosher turned his red light on, and the vehicle turned east on 6th Street. He followed with his red light on and when he threw his spotlight on the vehicle, it stopped. Defendant was driving and his wife was with him. Upon stopping, defendant walked back and met officer Mosher between the two cars. When asked for his operator's license, defendant stated he had none. Then he was asked for a registration card, and he said he had none.

Police Officers Clinton and Rogers then arrived to assist. Defendant and his wife rode with Rogers and Clinton drove defendant's car, with Mosher following, to the police station, where investigation commenced on the ownership of the car. At the station Officer Clinton, standing by defendant's car, noticed defendant's dog in the back seat becoming tangled in its leash. He removed the dog and tied it to the front bumper. Clinton noticed two shirts wrapped in cellophane with Emerson's store label, in the well where the convertible top folds down. Shortly thereafter, Clinton pointed out the shirts to Mosher. Mosher then also saw a man's suit and part of a hanger behind the well. Because of this discovery, Mosher and Clinton went immediately to Emerson's Clothing Store where defendant's car had been parked. They found the front door ajar and could see shirts scattered on the floor and counter, and an empty suit rack. Defendant was then asked for the key to his car trunk. He denied having a key. The officers were then compelled to forcibly open the trunk. They discovered therein 43 suits and 11 shirts, each having Emerson's label, and, in addition, a pry bar under the front seat painted two shades of green. This green pry bar matched an indentation or mark in the aluminum door frame of Emerson's Store. In this pry-bar mark particles of green paint

were found. They were microscopically and chemically examined and tested by an expert criminologist, and found to be identical in colors and chemical composition with the paints on the pry bar. In addition, particles of aluminum were found adhering to the bar. The pry-bar mark was in the aluminum of Emerson's door frame.

There had been taken from Emerson's Store 114 suits, 15 sport coats, 12 shirts and 3 sweaters. The front door had been locked at 8 p. m. the evening before the burglary. The clothes in defendant's car were identified as part of the missing merchandise. Defendant and another man had been in Emerson's Store on August 21, 1959, at about 7 p. m. and had stayed about 20 minutes. The other man, who was shorter, bought a cap.

Defendant claimed the practice of buying goods for short price, admitting that he suspected they were stolen, and claimed purchase of the suits and shirts from a person he called "Jose," whose full name he did not know, whose address he did not know, and who could not be located.

## Search and Seizure

Defendant contends the court erred in not granting defendant's motion to suppress the exhibits in the case and to strike the testimony of the officers because of the illegally obtained evidence. This position is without support in law or fact.

■ Officer Mosher had the right to stop defendant's car because of the suspicious circumstances he observed when it pulled away from the curb and continued in a zig-zag pattern without lights at 4 a. m. ■■ As stated in *People* v. *Galceran*, 178 Cal.App.2d 312, 315 [4] [2 Cal.Rptr. 901] :

"It is well established that police officers may reasonably stop vehicles violating traffic laws, parking regulations, or vehicles which have defective equipment in violation of the requirements of the Vehicle Code."

■ When defendant was unable to produce a driver's license or satisfactory proof of ownership of the Cadillac, the officer had reasonable cause to believe that it was a stolen vehicle and defendant guilty of grand theft (auto). (Veh. Code, § 503, now § 10851.) (*People* v. *Galceran, supra,* 178 Cal.App.2d 312, 315-316 [3b, 5-6]; *People* v. *Nebbitt,* 183 Cal.App.2d 452, 456-457 [1-5, 7, 8] [7 Cal.Rptr. 8].) ■ As stated in *People* v. *Nebbitt, supra,* at p. 454 [4, 5] :

"As to how reasonable cause shall be determined in a given case, the court shall consider the facts and circumstances presented or apparent to the officer at the time he was required

to act [citations]. ▮ In this connection it should be borne in mind that the credibility of witnesses and the weight of the evidence are matters exclusively within the province of the trial court and, as it had a right to do, it accepted the testimony of the police officers relative to what occurred prior to defendant's arrest, and rejected the latter's version of the same.''

Officer Clinton either observed the two Emerson shirts in defendant's car while standing outside the car, or while removing defendant's dog from the car. ▮ To observe through a car window what is patent, is not a search. (*People* v. *Wright,* 153 Cal.App.2d 35, 39 [5] [313 P.2d 868]; *People* v. *Brooks,* 154 Cal.App.2d 631, 635 [5] [316 P.2d 435].) ▮ To remove defendant's dog from his car under the circumstances here was justified, and he did not have to ignore contraband that was in plain sight even though disconnected with the purpose of the entry or not related to the crime for which defendant was arrested. (*People* v. *Roberts,* 47 Cal.2d 374, 379 [8] [303 P.2d 721]; *People* v. *Nebbitt, supra,* p. 461 [15]; *People* v. *Simpson,* 170 Cal.App.2d 524, 530 [3] [339 P.2d 156]; *People* v. *Gonzales,* 182 Cal.App.2d 276, 280 [8] [5 Cal.Rptr. 920].)

The search of defendant's car took place after defendant had been booked on suspicion of burglary. ▮ The observance of two Emerson shirts in defendant's car, which car had been parked in front of Emerson's Store and driven away with its lights out at 4 a. m. in the morning, the lack of registration and driver's license, and the finding of the physical condition of Emerson's Store which showed an entry and theft, all occurred before the opening of the trunk, and show ample probable cause for arrest without a warrant. (*People* v. *West,* 144 Cal.App.2d 214, 217-219 [1, 2, 3] [300 P.2d 729].) ▮ As incident to the arrest, the officers were entitled to search defendant's car. (*People* v. *Cantley,* 163 Cal.App.2d 762, 767 [6] [329 P.2d 993].) ▮ The search and seizure was also lawful as the officers had reasonable cause to believe that defendant's car contained stolen property. (*People* v. *Brajevich,* 174 Cal.App.2d 438, 443-445 [1-8] [344 P.2d 815].) ▮ Even though the officers could have obtained a search warrant, the search was legal as incident to a lawful arrest. (*People* v. *Nebbitt, supra,* p. 461 [14]; *People* v. *Chapman,* 151 Cal.App.2d 59, 62 [1] [311 P.2d 190].) ▮ Defendant complains of the officers' forcible opening of his car trunk. Defendant did not

48

produce the key, and the officers had no alternative. A search warrant would not open the car trunk. We find no merit in this complaint.

The action of the officers can be justified, also, under another approach. ▇ After defendant was taken into custody on suspicion of auto theft, which required that he be taken before a magistrate without unnecessary delay (Pen. Code, § 849), the officers had a lawful right to impound his car and make an inventory of the personal items in the car. ▇ Where the officers had custody of an automobile, contraband articles found therein are already legally in their possession and no new seizure occurs. (*People* v. *Nebbitt, supra,* 183 Cal.App.2d 452, 459-461 [9-11, 13] ; *People* v. *Ortiz,* 147 Cal.App.2d 248, 250 [1-2] [305 P.2d 145] ; *People* v. *Simpson, supra,* pp. 529-530 [1a, 2].)

SUFFICIENCY OF THE EVIDENCE

Defendant, in his notice of appeal, raised the point of insufficiency of the evidence, but does not directly mention it in his brief. Therefore this court might well disregard this contention. ▇ However, even a brief sketch of the evidence makes clear that it was ample. Defendant was seen parked in front of a store, which was later found to have been just burglarized. It was 4 a.m. and still nighttime. He drove away without lights, traveling at high speed, zig-zagging through many street turns without apparent directional objective. On being finally stopped, he had no registration certificate, no driver's license, and did not produce the key to the car trunk. In the car were found goods stolen in the burglary, and there was also found in the car the tool which was fairly identified as the means of forced entry to the store. He told a nebulous story of buying the goods from a person whose full name, address and real identity he could not furnish and who could not be located. Other details are hardly necessary. The evidence was ample. (*People* v. *Murphy,* 173 Cal.App.2d 367, 371 [3], 373 [5, 6] [343 P.2d 273].)

The rule governing the position of an appellate tribunal on appeal on a claim of insufficiency of the evidence has been repeated so often as to make unnecessary its repetition *in extenso.* ▇ As was said in *People* v. *Love,* 53 Cal.2d 843, 850 [2] [350 P.2d 705]:

" 'If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence

of the defendant will not warrant interference with the determination of the jury.' [Citations.]''

For a full elucidation of the rule, see *People* v. *Newland, supra.*

The authorities cited by appellant offer no factual analogy to the case at bar. None of them are in conflict with the views hereinbefore expressed.

From a review of the entire record, it is apparent that defendant was accorded a full and fair trial, and that the evidence was legally obtained and was ample to support the judgment of conviction.

The judgment and order denying motion for a new trial are affirmed.

Griffin, P. J., and Coughlin, J., concurred.