[Crim. No. 7710.   Second Dist., Div. Four.   May 9, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. GARY LEWIS ODEGARD, Defendant and Appellant.

Gary Lewis Odegard, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Edward A. Hinz, Jr., Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—On December 16, 1960, an information was filed by the District Attorney of Los Angeles County charging defendant Gary L. Odegard and Truman R. Nyland with a violation of Penal Code section 211, robbery. After a jury trial they were found guilty and were sentenced to imprisonment in the state prison for the term prescribed by law. Odegard appeals from the judgment and "from the denial of the motion of said defendant for a new trial." There is no evidence in the record of a motion for a new trial, and we will assume that this case is on appeal from the judgment.

The facts, viewed favorably to respondent, are as follows: On November 19, 1960, at 8 p. m., defendant Odegard and Nyland entered the Gardendale Market in Downey, California, as the last customer was leaving.

Mrs. Betty Stowe, a grocery clerk, asked if she could help them as it was closing time. In response to a question by defendant, she directed them to the milk counter. They took a quart of milk and walked back to the checkstand where Mrs. Stowe was waiting at the cash register. Nyland walked to the end of the counter and defendant put the quart of milk and a dollar bill on the counter. Defendant then ordered Mrs. Stowe to open the cash register. She noticed that Nyland had a gun pointed at her. Defendant again ordered her to open the cash register, which she did. Defendant took the money from the register and put it in his pocket. It was composed of currency

and change and amounted to $639.81. Defendant, shortly thereafter, grabbed the arm of Mr. Pat Myers, a clerk employed at the store, and ordered him to let them out of the back door. After this was done, defendant and Nyland fled.

At the trial, Mrs. Stowe, Mr. Pat Myers and Mr. Felton Schultz, employees of the store on duty at the time of the robbery, positively identified defendant and Nyland as the robbers.

Defendant first contends that his arrest "was entirely without reasonable or probable cause, and whatever evidence was subsequently acquired was taken as a result of an illegal arrest and by unlawful search and seizure."

Officers Knott and Gibson were on routine radio car patrol in Los Angeles on November 19, 1960, at approximately 9 p. m., when they noticed an approaching Ford automobile operated by defendant, who was accompanied by Nyland. The officers noticed that the vehicle had no front license plate. The officers, after turning behind the vehicle, discovered that the license plate on the rear of the car was a Washington plate "BCX 267," and that it was only partially attached so that it hung down on one end. The officers drove up alongside the vehicle to get a look at the driver. Defendant turned his head toward the officers with a surprised look. Thereupon the officers stopped the car. Officer Knott approached the driver's side of defendant's vehicle and asked defendant for his operator's license. Defendant replied that he did not have one. Officer Knott asked him for the automobile registration and was handed a registration card in the name of "Albert Kelly."

Officer Knott noticed two steel objects on the passenger side of the vehicle, under Nyland's feet: a straight steel bar about 18 inches long and $\frac{1}{2}$ to $\frac{3}{4}$ of an inch in diameter; and a capped conical bar 6-8 inches long with white adhesive tape around the tapered end.

Defendant and Nyland were requested to step from the vehicle. The officers inspected the two steel objects. After interrogating defendant and Nyland the officers placed them under arrest for carrying concealed weapons.

The officers decided to transport them to Wilshire for further investigation and possible booking. At this time, they asked the two men if they wanted to leave their car legally parked. Defendant and Nyland stated they wanted to place their clothes in the trunk for safekeeping. Defendant and Officer Knott put the clothes in the trunk and locked it. Offi-

cer Gibson parked the automobile legally and the two men were transported to the Wilshire Station. Approximately one hour later, the automobile was impounded.

On November 21, 1960, Police Officer Devich received a telephone call from Officer Carberry of the Downey Police Department. Officer Carberry, the investigating officer of the robbery, had received a teletype report describing defendant and Nyland. On that day, Officer Devich went to the impound garage to search the vehicle. The lock of the trunk was jammed so that the key would not open it. The officer entered through the door, pulled the rear seat loose, extracted a sport coat from the trunk, and noticed a large roll of currency. The officer then directed a mechanic to pry the trunk open. When the trunk was opened, Officer Devich found a roll of currency and coins amounting to $637.85, a loaded revolver, and a box of .38 caliber cartridges.

From the facts previously recited it is apparent that Officers Knott and Gibson had a duty as law enforcement officers to stop defendant's vehicle for operating on a public highway in violation of Vehicle Code sections 5200 (display of license plates), 5201 (positioning of license plates), and 5202 (period of display), requiring display of license plates. (*People* v. *Nebbitt*, 183 Cal.App.2d 452, 457 [7 Cal.Rptr. 8].)

After stopping the vehicle, it was reasonable for the officers to inquire as to driver's license and registration. Defendant was unable to produce a driver's license or satisfactory proof of ownership. Therefore, the officers could have had reasonable cause to believe that the automobile was stolen and that defendant was guilty of theft of the vehicle. (Veh. Code § 10851; *People* v. *Myles*, 189 Cal.App.2d 42, 46 [10 Cal.Rptr. 733].)

Section 12020 of the Penal Code prohibits the possession of any instrument or weapon *of the kind* known as a blackjack, slug shot, billy, sandclub, sandbag, or metal knuckles. Proof of possession alone is sufficient to convict; it is not necessary to prove malicious intent or wrongful use of the instruments. (*People* v. *McKinney*, 9 Cal.App.2d 523, 525 [50 P.2d 827].) Under the circumstances the officers could have an honest and strong suspicion that the defendant and Nyland were in possession of instruments or weapons of the kind described in Penal Code section 12020. Thus, the arrest of defendant for violation of this section was lawful.

After arresting defendant the officers had a legal right to impound the vehicle under Vehicle Code section

22651, subdivision (h). ▇▇ Since the officers had lawful custody of the car, the articles found therein were properly in their possession and no new seizure occurred. (*People* v. *Myles,* 189 Cal.App.2d 42, 48 [10 Cal.Rptr. 733]; *People* v. *Nebbitt,* 183 Cal.App.2d 452, 459-461 [7 Cal.Rptr. 8].) The evidence admitted at the trial was legally obtained as an incident of a lawful arrest.

Defendant next contends that he was denied his statutory right to a speedy trial since he was not brought to trial within 60 days from the filing of the information as provided by Penal Code section 1382, subdivision 2.

The information was filed on December 16, 1960. Defendant and his counsel were present when the time to plea was continued to December 27, 1960. On December 27, 1960, defendant, with his counsel present, pleaded "not guilty," and the trial was set for February 17, 1961. Neither counsel nor defendant objected to this date. On February 17, 1961, the trial was continued to February 20, 1961: "Due to the congested court calendar in the criminal division of the superior court and counsel for defendants being engaged in trial in another department."

On February 20, 1961, the cause was called for trial. In the judge's chambers, defendant personally moved to dismiss the action under Penal Code section 1382. This motion was denied.

The court properly denied the motion. Penal Code section 1382 (before amendment after the trial in the instant case) provided in part that an action must be dismissed when a defendant "is not brought to trial in a superior court within 60 days after the . . . filing of the information . . . except that an action shall not be dismissed . . . if it is set for trial . . . at the request of the defendant or with his consent, express or implied. . . ." ▇▇ When a defendant fails to object at the time a cause is set for trial beyond the statutory period, consent is presumed. (*Ray* v. *Superior Court,* 208 Cal. 357, 358 [281 P. 391].) As stated in *People* v. *Encinas,* 186 Cal.App.2d 12, 16 [8 Cal.Rptr. 624]: "[T]hus for his failure to object within the statutory period, objection cannot thereafter be validly made [citations]; and for his failure to object at the time the cause was set for trial, his consent thereto is presumed. [Citations.] Appellant's consent being implied and he having waived objections [citations], the trial court properly denied the motion."

Defendant contends that statements by the district attorney

relating to defendant's failure to deny evidence presented against him were prejudicial error. This contention is untenable. ■ A district attorney in this state may comment upon the failure of a defendant to take the stand to deny or explain evidence presented against him when it is in his power to do so. (*People* v. *Adamson*, 27 Cal.2d 478, 486-490 [165 P.2d 3]; *People* v. *Neely*, 163 Cal.App.2d 289, 315 [329 P.2d 357].)

■ Defendant further complains that the district attorney's comments were not limited to matters which defendant could reasonably be expected to explain or deny, but defendant fails to specify these matters. We therefore cannot consider the merits of this complaint.

■ Defendant also asserts that the district attorney erred prejudicially in stating that the proceeds of the robbery were found in defendant's automobile. We do not agree, for the statement by the district attorney was supported by evidence presented at the trial. Defendant was identified by three witnesses as the person who participated in the robbery and took the money. It could therefore reasonably be inferred that the money found in the trunk of defendant's automobile was the same as that taken in the robbery.

Defendant's assertions that he was denied effective assistance of counsel are not meritorious. The record indicates he was ably represented at all stages of the trial proceedings by counsel from the public defender's office. ■ The handling of the defense by counsel will not be declared inadequate except in those rare cases where counsel displays such a lack of diligence and competence as to reduce the trial to a farce or a sham. (*People* v. *Ricks*, 161 Cal.App.2d 674, 678 [327 P.2d 209].) Defendant has failed to make such a showing in the instant case.

Lastly, defendant contends that he was deprived of certain records which he requested for this appeal. This court has reviewed the record on appeal. The only item not included which defendant demands is the transcript of the oral argument made by his counsel. No reference is made by defendant to what was said in the oral argument by his counsel that would make it proper to be included in the record on appeal. ■ Defendant is precluded from demanding augmentation of the record on appeal where he fails to include the points on which he intends to rely that would make it proper to be included. (Rules on Appeal, rule 33, subd. (b).) We

hold that defendant was supplied transcripts containing all of the vital records to which he was entitled.

Defendant received a fair trial and was well represented. The judgment is affirmed.

Burke, P. J., and Balthis, J., concurred.