[Crim. No. 12446.   Second Dist., Div. Three.   Jan. 27, 1967.]

THE PEOPLE, Plaintiff and Appellant, v. CELESTINO TAPIA GIL, Defendant and Respondent.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Plaintiff and Appellant.

Erling J. Hovden, Public Defender, and James L. McCormick, Deputy Public Defender, for Defendant and Respondent.

COBEY, J.—This is an appeal by the People pursuant to Penal Code, section 1238, subdivision 1, from an order setting aside an information charging possession of marijuana in violation of Health and Safety Code, section 11530, a felony, on motion by the respondent under Penal Code, section 995, on the ground that the search of his car by two deputy sheriffs, which was made incident to his lawful arrest for drunk driving, was constitutionally unreasonable. (U.S. Const., 4th Amend.; Cal. Const., art. I, § 19.)

The pertinent facts follow. Two deputy sheriffs stopped respondent in his car after observing erratic and illegal driving on his part. Just after they had turned on the red light of their patrol car, honked its horn and turned its spotlight into the rear window of respondent's car, respondent turned around and looked at their patrol car. Respondent then drove 30 to 40 feet farther before turning into the driveway at the rear of a hamburger stand, crossing the rear of a parking lot and parking in the parking area. Immediately after stopping he was observed by one of the officers to "lean forward out of view and come directly back to a sitting position."

One of the officers then asked respondent to get out of his car and produce his driver's license. At this time his partner smelled a strong odor of alcoholic beverage on respondent's person. Respondent had trouble standing without weaving from side to side and two or three times he had to hold on to the door on the driver's side of the vehicle. His speech in answering questions was slightly slurred. He was then placed

under arrest for driving under the influence of alcoholic beverage, advised of his constitutional rights and placed, seated and handcuffed, in the back of the patrol car which was parked directly behind his car.

One of the officers, sitting in the front seat of the patrol car, then started to fill out the CHP storage form on respondent's vehicle. Respondent started protesting violently about having his car stored and requested that instead it be left there so that a friend of his could pick it up. The officers did not ask respondent in response to this protest, whether or not he was protesting the proposed storage of his car because of the expense to him.

In spite of respondent's protest the two officers went together over to respondent's car to inventory its contents. A cap, like the cap of a whiskey bottle, was observed on the front seat and an empty beer can was found on the floor board behind the driver's seat. Believing that there might be whiskey or beer under the front seat, due to respondent's bending over on being stopped, as related above, and for inventory purposes as well, one of the officers looked under the front seat of respondent's car.

As he was getting up, this officer lifted up the small rubber floor mat of approximately 16 to 18 inches by 8 to 12 inches provided for the driver's feet and discovered there "a white hand-rolled cigarette," which subsequently was proven to be a marijuana cigarette.

According to his partner, the officer picked up this floor mat from force of habit. It was not done for inventory purposes but on a "hunch" due to respondent's violent protest against the storage of his car, his nervousness during the making of the inventory and due to his leaning over and going out of sight just after he stopped his car. The officer's partner further testified that the floor mat was looked under because respondent could have been driving either under the influence of alcohol or drugs.

The two officers then went back to the patrol car and arrested respondent for possession of marijuana. They then returned to respondent's car for a further search and found nine marijuana seeds on the two seats, the rear floor boards and under the rear seat of respondent's car.

The search, which is here attacked as being constitutionally unreasonable, was made incident to a lawful arrest (Veh. Code, § 23102, subd. (a)), and to a customary and well-justified procedure—the inventorying of the contents of

respondent's car (see *People* v. *Ortiz,* 147 Cal.App.2d 248, 250 [305 P.2d 145]), preliminary to its lawful impounding (Veh. Code, § 22651, subd. (h)). Therefore, there can be no question about the constitutionality of the search in terms of its having been properly occasioned. (*People* v. *Nebbitt,* 183 Cal.App.2d 452, 459, 461 [7 Cal.Rptr. 8], hear. denied.)

■ Of course, the search under attack cannot be constitutionally justified by the fact that it did uncover marijuana. (*People* v. *Brown,* 45 Cal.2d 640, 643 [290 P.2d 528].)

■ On the other hand it is not necessarily constitutionally vulnerable because it turned up evidence of a crime different from the one which occasioned the search. (*People* v. *Galceran,* 178 Cal.App.2d 312, 317 [2 Cal.Rptr. 901].)

■ What is challenged in this case in reality is the scope of the search. In view of the nature of the offense for which respondent was arrested, namely, drunk driving, it was proper for the officers to search his car for additional evidence related to this offense and particularly for liquor containers. (*People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834].) As related above, they found this type of evidence in what appeared to be a cap to a whiskey bottle and in the empty beer can. However, such containers could not have been under the small and flat floor mat; and consequently, this aspect of the search cannot be constitutionally justified on this basis. (*People* v. *Molarius,* 146 Cal.App.2d 129, 130-131 [303 P.2d 350], hear. denied.)

■ There remains then the question—is there any other constitutional basis for the officer having lifted the floor mat and thereby having discovered the marijuana cigarette. The officer himself did not testify at the preliminary hearing. His partner, however, said that the floor mat was not lifted for inventory purposes. Consequently, the inventory cases, as such, are of no help to us.

Likewise, since both the officers then knew that respondent's drunkenness was due to alcohol rather than drugs, the search under the floor mat could not have been made to determine whether respondent's drunken condition was due to drugs or alcohol. (Cf. *People* v. *Johnson,* 139 Cal.App.2d 663, 664, 665 [294 P.2d 189], hear. denied.)

According to the testifying officer the act in question was done instead on a "hunch" based on the following three circumstances: (1) respondent's violent protest against storing his car, (2) his nervousness during the making of the inventory and (3) his leaning over and disappearing from view just after he stopped his car.

We cannot see that the first of these circumstances justified the officer's act. Any citizen, guilty or innocent, threatened with imminent impounding of his car might well violently protest in order to try to avoid the expense involved. This conduct is as consistent with innocence as it is with guilt. But the nervousness of respondent while the inventory was being made and his leaning over just after he stopped his car and after he was aware that he was being stopped by law enforcement officers are actions which to a reasonably prudent man and particularly to an experienced law enforcement officer (Cf. *People* v. *Williams*, 196 Cal.App.2d 726, 728 [16 Cal. Rptr. 836], hear. denied) might well have indicated such consciousness of guilt as to warrant a search in the particular area within the car where contraband might have been deposited by respondent by means of his bending over. (Cf. *People* v. *Sanson*, 156 Cal.App.2d 250, 251-253 [319 P.2d 422].)

This is a close case. On the one hand as pointed out in *People* v. *Moray*, 222 Cal.App.2d 743, 744-746 [35 Cal.Rptr. 432], with reference to the defendant there raising his right shoulder as if reaching in his pocket and then leaning toward the right hand side, such an arm motion might have been made to scratch himself, to reach for his wallet for purposes of obtaining his driver's license, or simply as a part of changing his sitting position. The same may be said of respondent's body movement here. Furthermore, the record before us is devoid of any indication that the investigating officers had any information whatsoever that would lead them to believe that respondent had been, was, or might be a narcotic offender. On the other hand, a similar bend in *People* v. *Shapiro*, 213 Cal.App.2d 618, 621 [28 Cal.Rptr. 907] which, together with the circumstance that the defendant there had delayed in stopping her car when the police signaled, was held to constitute probable or reasonable cause for the police searching in the area where it appeared that defendant by this body motion might have hidden contraband.

In the *Moray* case there was no suspicious conduct on the part of the defendant prior to the search other than his arm motion which we have discussed. In this case though, we have prior to the search, in addition to the respondent's body movement, his nervousness during the making of the inventory. There is also the delay of the respondent in responding to the officers' signals to stop. Aside from his drunken condi-

tion, this is unexplained. Since under these circumstances his body movement was one from which conflicting inferences might well have been drawn by reasonable men, and since such inferences, insofar as they favor the People, are in and of themselves substantial evidence to support the admissibility of the evidence so obtained, the motion to set aside the information should have been denied. (*People* v. *Green*, 183 Cal.App.2d 736, 738-739 [7 Cal.Rptr. 235], hear. denied.)

Accordingly, the order setting aside the information is reversed.[1]

Ford, P. J., and Moss, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 22, 1967. Peters, J., was of the opinion that the petition should be granted.

---

[1]This decision is not intended to prevent the lower court at the trial of this case from ruling otherwise on the question of admissibility presented here, provided that it then has before it a fuller record on the point than we now have. (See *Badillo* v. *Superior Court*, 46 Cal.2d 269, 271-272 [294 P.2d 23].)