[Civ. No. 12026. Third Dist. Dec. 12, 1968.]

NOEL WILLIAM VIRGIL et al., Petitioners, v. THE SUPE-RIOR COURT OF PLACER COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Boon, Coffield & Burford, Lyle H. Shattuck, and Roland E. Iverson for Petitioners.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Edward A. Hinz, Jr., and Edward W. Bergtholdt, Deputy Attorneys General, for Real Party in Interest.

PIERCE, P. J.—Petitioners Virgil, Hinegardner and Leggett were charged in two counts for violation of Health and Safety Code section 11530—cultivating marijuana (count 1) —and possession of marijuana (count 2). In the trial court they moved to set aside the information pursuant to Penal Code section 995 and to suppress certain evidence pursuant to Penal Code section 1538.5. Both motions were denied. We issued an alternative writ of prohibition and a temporary stay of proceedings.

The sole evidence upon which petitioners were held to answer and upon which both counts of the information rest is certain contraband found and seized during a search (or, as the People contend, during the "taking of an inventory" of the contents) of petitioner Virgil's automobile. The question before us is: Did law enforcement officers come by that evidence legally or in violation of petitioners' constitutional rights? The circumstances which we will relate compel us to reach the latter conclusion.

At approximately 4:40 p.m., March 8, 1968, Officer Ewing of the California Highway Patrol was standing near his patrol car on the eastern outskirts of Loomis, near Taylor Road. Taylor Road is narrow with rises and dips (normal to older county roads in the foothill areas). In the vicinity of the point where Ewing stood, there are a church, a high school and numerous businesses. The officer's attention was drawn to the sound of a speeding automobile. He observed a Chevrolet traveling along Taylor Road. It was in view for about a second and a half. During that interval it traveled a distance of from 90 to 100 feet. Ewing estimated its speed at 70 miles per hour. At this point the posted speed limit is 35 miles per

hour. (Later petitioner Virgil was identified as the driver and owner of the speeding car. Petitioners Hinegardner and Leggett were riders.) During the initial observation of the Virgil vehicle, Officer Ewing noted Leggett as a person known to him. Ewing got into his patrol car and gave chase. Although he drove along Taylor Road at high speed, which at times reached, he said, 100 miles per hour, he did not again catch sight of the Virgil car. Officer Ewing radioed for assistance from other California Highway Patrol "units." He then turned into another road and drove into the town of Penryn, about a mile and a half east of Loomis. While driving through that town, he again saw the Virgil vehicle emerging from a side road. It turned onto the road on which Ewing was driving and was ahead of the officer's car. Virgil was then traveling at a speed of 20 miles per hour. The officer signaled for Virgil to stop. He heeded the officer's direction immediately. Ewing stopped behind the Chevrolet, got out, asked for and obtained Virgil's driver's license. The car's registration slip showed Virgil to be the registered owner. Ewing then ordered Virgil to get out and go back to the patrol car. The officer commenced to issue a citation to Virgil for reckless driving.[1] Another highway patrolman drove up. Ewing then informed Virgil he was under arrest. Hinegardner and Leggett, the other occupants of the Virgil automobile, were directed to get out of the car. At some time during the foregoing events, all three petitioners were frisked by the officers. Nothing of a suspicious nature was found on their persons, then or later.

Officer Ewing then commenced an examination of the inside of the Chevrolet. At the preliminary hearing he was asked what his purpose was. He said: "Well, I was inventorying. Q. Did you have a note pad and pencil and . . . [were you] writing down the list of contents? A. No." That statement should be compared with one made earlier by the officer that he was equipped with "check-off list forms" for inventory purposes.

The officer first opened the glove compartment. There is no evidence that he noted (or inventoried) anything therein. He next examined the bare floorboard of the driver's compartment. There he discovered a single seed which Ewing stated he thought was a marijuana seed. Next a pan containing approximately fifteen growing plants was discovered on the

---

[1]Vehicle Code section 23103 provides in relevant part: "Any person who drives any vehicle upon a highway in wilful or wanton disregard for the safety of persons or property is guilty of reckless driving. . . ."

floor underneath the front seat. At the hearing these were proven to be marijuana plants. In an ashtray in the rear compartment of the car a single charred seed was found. Ewing also believed this to be a marijuana seed. All of the petitioners were then arrested for possession of marijuana.

Ewing testified that when he had opened the car door to commence taking his "inventory" Virgil said "I didn't have the right to go in his car." He "challenged" Ewing's right. *There was no further conversation.*

The authority under which Officer Ewing purported to act in "inventorying the contents" of Virgil's automobile was the right under Vehicle Code section 22651, subdivision (h),[2] to arrest and take one to be charged with reckless driving before a magistrate plus an authority assumed by the California Highway Patrol. Ewing stated: " [We] store these vehicles and to insure the safekeeping of this property, we inventory and store this property, in this case being a vehicle, and it is then released to a bonded towing agency to insure the safety of the property."

The officer misunderstood the nature and extent of his authority. Although there are cases, to be discussed below, which authorize under proper circumstances the taking of an automobile into custody, after its removal from the highway, and also the taking of an inventory of its contents, the facts above do not describe such a situation.

There is no dearth of case law covering the legality of searches of impounded vehicles. Decisions follow two lines, seemingly parallel, destined, with one noteworthy exception, *People* v. *Upton* (1968) 257 Cal.App.2d 677 [65 Cal.Rptr. 103], to meet only at infinity. Since our concern here with either line is somewhat cursory, citation of the cases will be illustrative rather than exhaustive. Both groups pay homage, at least by statement, to the rule that there must be compelling reasons and exceptional circumstances to justify a search in the absence of a search warrant. A warrantless search may be made only when the search is incident to a lawful arrest and is a reasonable search with probable cause. We mention first some of the decisions following a somewhat simplistic

---

[2]Vehicle Code section 22651 provides in relevant part: "Any member of the California Highway Patrol . . . may remove a vehicle from a highway under the following circumstances:

" . . . . . . . . . .

"(h) When an officer arrests any person driving or in control of a vehicle for an alleged offense and the officer is by this code or other law required or permitted to take and does take the person arrested before a magistrate without unnecessary delay."

takeoff from that launching. (See *People* v. *Gil* (1967) 248 Cal.App.2d 189, 191-192 [56 Cal.Rptr. 88] (hear. den.); *People* v. *Garcia* (1963) 214 Cal.App.2d 681, 684-685 [29 Cal. Rptr. 609]—a decision of this court; *People* v. *Odegard* (1962) 203 Cal.App.2d 427, 431-432 [21 Cal.Rptr. 515]; *People* v. *Myles* (1961) 189 Cal.App.2d 42, 47 [10 Cal.Rptr. 733]; *People* v. *Nebbitt* (1960) 183 Cal.App.2d 452, 459 [7 Cal. Rptr. 8]; *People* v. *Ortiz* (1956) 147 Cal.App.2d 248, 250 [305 P.2d 145].) In some of the cited cases Fourth Amendment search and seizure problems are muted and there is language suggesting that if there is a right to arrest the driver of a car and to take him before a magistrate (e.g., see fn. 1) and a right to remove the driver's vehicle from the highway (see fn. 2) then there is a right to take the car into custody and a resulting right, in fact a duty, to inventory its contents. In all of the foregoing cases, however, there were circumstances (e.g., intoxication of the driver, evidence that he was driving a stolen car, furtive behavior, etc.) which made reasonable a *search* of the accused vehicle. The resultant holdings, therefore, were proper, irrespective of any question of a right to impound.

The other group of cases (see e.g., *Preston* v. *United States* (1964) 376 U.S. 364 [11 L.Ed.2d 777, 84 S.Ct. 881]; *Cooper* v. *California* (1967) 386 U.S. 58 [17 L.Ed.2d 730, 87 S.Ct. 788]; *People* v. *Harris* (1967) 67 Cal.2d 866, 871 [64 Cal.Rptr. 313, 434 P.2d 609]; *People* v. *Webb* (1967) 66 Cal.2d 107, 114 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]; *People* v. *Burke* (1964) 61 Cal.2d 575, 580-581 [39 Cal.Rptr. 531, 394 P.2d 67]) recognize that custodial possession of an automobile is not an inevitable concomitant of an arrest of the driver. (See particularly the comparison in *Cooper* v. *California, supra,* distinguishing its facts from *Preston* v. *United States, supra,* and where it is said (at p. 732 of 17 L.Ed.2d): ". . . The search [in *Preston*] was therefore to be treated as though his [i.e., defendant's] car was in his own . . . possession, safe from intrusion by the police or anyone else.") The decision in *People* v. *Upton, supra,* 257 Cal.App.2d 677, is the "noteworthy exception" mentioned above which attempts expressly to draw together the lines of cases cited. Of the former group it says that the court is not "unmindful" of the cases expressing what we will call the "lawful arrest equals the right of removal, equals the right to take into custody, equals the right to take an inventory, equals the right to search" doctrine. It says (on p. 682 of 257 Cal.App.2d)

"nor do we think that the Constitution permits an otherwise unreasonable search of a car simply because the police have statutory authority to impound it under Vehicle Code, sections 22650 and 22651."

We go farther. We hold that the Constitution does not permit an otherwise unreasonable search of a car simply because the police have statutory authority to arrest and take an accused before a magistrate plus the right to cause the car to be *removed from the highway.* To the extent that our earlier holding in *Garcia, supra,* may indicate an absolute right to take the car into custody it is disapproved.

We are now ready to apply the rules to the facts of the case before us. We will not challenge the bona fides of the decision of Officer Ewing to arrest petitioner Virgil for reckless driving and to take him before a magistrate. We do not even challenge the officers' right to cause the Chevrolet to be removed from the highway (assuming the car then to have been on a highway). We do challenge and we negate the necessity or the legality of taking the Virgil car into custody. Just as in *Preston, supra,* the arrest of the defendant (for vagrancy) had no connection with a necessity to take the accused's car into custody so there was no necessity here. Virgil had been arrested for a traffic violation; nothing more. Such an arrest alone could "not have justified a search of the car for such search could have had no relation to the traffic violation. (See *People* v. *Blodgett,* 46 Cal.2d 114, 116-117 [293 P.2d 57].)" (*People* v. *Moray* (1963) 222 Cal.App.2d 743, 746 [35 Cal.Rptr. 432] ; see also *People* v. *Molarius* (1956) 146 Cal.App.2d 129, 130-131 [303 P.2d 350].) The traffic violation did not involve any forfeiture of the automobile nor was there anything else that had happened which would reasonably justify a search. There was no furtive conduct. Virgil's voiced opposition to the searching of his car was natural. It gave no cause for suspicion. (See *People* v. *Gil, supra,* 248 Cal.App.2d at p. 193.) The burden was upon the prosecution to justify the search. (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].) It was therefore its burden to explain that an impounding of the car was necessary. Virgil was not alone. No reason appears why his friends could not have taken charge of the vehicle. The officers did not consult Virgil's wishes or the willingness of his companions to drive the car to a place of safekeeping (the only legitimate purpose under the facts known at the time for which custody could have been taken). In view of the protests of Virgil and the presence of the contraband in the car which the search

revealed (which does not justify the search), the conclusion is inescapable that had Virgil been given the opportunity to make the decision—which was his to make—police custodial care of the car would not have been required. Absent such custody, no inventory taking was necessary or proper. The search violated petitioners' Fourth and Fourteenth Amendment rights.

Let a peremptory writ of prohibition issue restraining the trial court from any further proceedings in this matter.

Friedman, J., concurred.

REGAN, J.—I dissent.

The preliminary examination in this case was before the Justice Court of the Auburn Judicial District, Placer County. The judge thereof found there was sufficient cause to believe the petitioner's guilty of a violation of section 11530, Health and Safety Code, and ordered them held to answer to the superior court. Thereafter, petitioners' motions in the trial court to set aside the information pursuant to section 995 of the Penal Code and to suppress the evidence pursuant to section 1538.5 of the Penal Code were denied. The majority opinion, in holding that the search of the automobile violated petitioners' Fourth and Fourteenth Amendment rights, seems to hold that the arresting officer must, after the arrest of the driver, explain to him that an impounding of the automobile is necessary and further consult the arrested driver as to his wishes or the willingness of his companions to drive the car to a place of safekeeping. Absent this advice, the impounding and subsequent inventory is unlawful.

After the pursuit by Officer Ewing of the California Highway Patrol, during which he called in two other patrol units to converge on the City of Penryn, the automobile of petitioners was located, stopped and petitioner Virgil, the driver, was placed under arrest for a violation of section 23103 of the Vehicle Code (reckless driving).

Ewing testified that if the driving of a person is reckless, most of the time he takes the driver into custody and then inventories the vehicle; that this action is taken pursuant to a policy adopted by the California Highway Patrol, which its officers are required to follow, and that he followed that policy in the case before us. He testified:

"Q. And what did you do in that connection?

"A. Well, we had the three gentlemen out of the vehicle,

with the assistance of Officer Tuel, and I went to the vehicle and made an inventory of the vehicle, which revealed the evidence.

"Q. Will you state to us how you made that inventory?

"A. Yes. I opened the right front door, looked in the glove box, looked in the front seat, and I noticed a marijuana seed on the right front floorboard. There is no carpeting on the floor. I picked up the seed, and I noticed under the right front seat was a small pan containing 15, 12 or 15 small, what appeared to be marijuana plants. And on closer examination I found a charred marijuana seed in the ashtray in the rear of the vehicle.

"Q. Did you take possession at that time, Officer, of the plant[s] that appeared to you to be a marijuana plant[s]?

"A. Yes, I did."

In *People* v. *Ortiz,* 147 Cal.App.2d 248, 250 [305 P.2d 145], the court states:

"Defendant does not question the validity of his arrest. His thesis is that the search was unreasonable and therefore illegal. Hence the contraband that was found was inadmissible in evidence.

"From defendant's position in the car, his physical condition, the manner in which the car was parked, and the earliness of the morning hour, the officer could reasonably conclude that defendant was 'in control of' the vehicle, and not just a passenger, at the time of the arrest. Hence the officer was entitled to impound the car (Veh. Code, §§ 585(b)(5) and 585.2; Pen. Code, § 849), and thus take possession of it.

"In the circumstances of this case it was not unreasonable for the police officer to make an inventory of the contents of the automobile prior to impounding it. Such inventory was a protection to the owner of the vehicle, the garage owner, and the officer. Since the marijuana was found during the course of making the inventory, it was not discovered as a result of an unreasonable search and therefore it was not inadmissible in evidence."

In *People* v. *Gil,* 248 Cal.App.2d 189, 191-192 [56 Cal.Rptr. 88] (hearing by the Supreme Court denied), the court states: "The search, which is here attacked as being constitutionally unreasonable, was made incident to a lawful arrest (Veh. Code, § 23102 subd. (a)), and to a customary and well-justified procedure—the inventorying of the contents of respondent's car (see *People* v. *Ortiz,* 147 Cal.App.2d 248, 250 [305 P.2d 145]), preliminary to its lawful impounding (Veh. Code, § 22651, subd. (h)). Therefore, there can be no question about

the constitutionality of the search in terms of its having been properly occasioned. (*People* v. *Nebbit,* 183 Cal.App.2d 452, 461 [7 Cal.Rptr. 8], hear. denied.)

"Of course, the search under attack cannot be constitutionally justified by the fact that it did uncover marijuana. (*People* v. *Brown,* 45 Cal.2d 640, 643 [290 P.2d 528].) On the other hand it is not necessarily constitutionally vulnerable because it turned up evidence of a crime different from the one which occasioned the search. (*People* v. *Galceran,* 178 Cal.App.2d 312, 317 [2 Cal.Rptr. 901].)"

In *People* v. *Garcia,* 214 Cal.App.2d 681, 684 [29 Cal.Rptr. 609], this court states: " ' ". . . A police officer is authorized to remove a vehicle from the highway to the nearest garage when he arrests any person driving, or in control of a vehicle for an alleged offense, or where such officer is, by the Vehicle Code or other law, required to take the person arrested immediately before a magistrate." (*People* v. *Simpson,* 170 Cal.App.2d 524, 530 [339 P.2d 156].) Thus, the officers had a lawful right to impound the car, and they, after Smith and defendant were removed therefrom, took possession of the same for that purpose. At that time, as is the standard practice, the officers proceeded to make an inventory of personal items in the vehicle (*People* v. *Ortiz,* 147 Cal.App.2d 248 [305 P.2d 145], wherein defendant was arrested for "drunk auto"). "In the circumstances of this case it was not unreasonable for the police officer to make a[n] inventory of the contents of the automobile prior to impounding it. Such inventory was a protection to the owner of the vehicle, and the garage owner, and the officer. Since the marijuana (found by officers in the glove compartment) was found during the course of making the inventory, it was not discovered as a result of an unreasonable search and therefor it was not inadmissible in evidence." (P. 250.)' (See also *People* v. *Nichols,* 196 Cal.App.2d 223 [16 Cal.Rptr. 328]; *People* v. *Myles,* 189 Cal.App.2d 42 [10 Cal.Rptr. 733]; *People* v. *Odegard,* 203 Cal.App.2d 427, 431-432 [21 Cal.Rptr. 515].)"

In *People* v. *Moore,* 69 Cal.2d 674, 682 [72 Cal.Rptr. 800, 446 P.2d 800], the court said:

". . . The basic purpose of the exclusionary rule is to deter unconstitutional methods of law enforcement. (*Elkins* v. *United States,* 364 U.S. 206, 217 [4 L.Ed.2d 1669, 1677, 80 S.Ct. 1437]; *Mapp* v. *Ohio, supra,* 367 U.S. 643, 656 [6 L.Ed.2d 1081, 1090, 81 S.Ct. 1684]; *People* v. *Parham,* 60 Cal 2d 378, 385 [33 Cal.Rptr. 497, 384 P.2d 104]; *People* v.

*Cahan, supra,* 44 Cal.2d 434, 445 et seq. [282 P.2d 905, 50 A.L.R.2d 513].) The exclusionary rule is not a penalty but is derived from the principle that the state must not profit from its own wrong. (*People* v. *Parham, supra,* 60 Cal.2d 378, 386.) By denying any profit from the unconstitutional methods of law enforcement, it is to be anticipated that law enforcement officials will have no incentive to engage in such methods.''

In the circumstances of this case I find nothing unreasonable in the action of the officer in arresting petitioner Virgil and the impounding of the automobile nor in the commencement of the inventory which immediately disclosed contraband. The automobile was in valid police custody and to inventory its contents was lawful and proper. If the majority opinion is saying that the *inventory* was in fact a *search* then the holding in *People* v. *Webb,* 66 Cal.2d 107, 128 [56 Cal. Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708], is applicable where, in the concurring opinion, Peters, J., states:

''. . . I feel bound by the rules announced by the Supreme Court . . . in *Cooper* v. *California,* 386 U.S. 58 [17 L.Ed.2d 730, 87 S.Ct. 788] . . . [a] search is now permissible without a warrant if the vehicle is in valid police custody. In the instant case the vehicle was undoubtedly in the valid custody of the police. A search was, therefore, proper under *Cooper, supra.''*

I would deny the writ.

A petition for a rehearing was denied January 6, 1969. Regan, J., was of the opinion that the petition should be granted. The petition of the real party in interest for a hearing by the Supreme Court was denied February 5, 1969.